GEORGE M. ROUNDS, by Guardian, etc., Respondent, *v.* THE DELAWARE, LACKAWANNA AND WESTERN RAILROAD COMPANY, Appellant.

| 61 | 129 |
|---|---|
| 133 | 266 |

| 64 | 129 |
|---|---|
| a166 | 441 |

| 64 | 129 |
|---|---|
| 171 | ¹449 |

| 64 | 129 |
|---|---|
| 75 | AD¹329 |

| 64 | 129 |
|---|---|
| 78 | AD³311 |

To make a master liable for the wrongful act of a servant to the injury of a third person it is not necessary to show that he expressly authorized the particular act, it is sufficient to show that the servant was engaged at the time in doing his master's business and was acting within the general scope of his authority; and this, although he departed from the private instructions of the master, abused his authority, was reckless in the performance of his duty and inflicted unnecessary injury.

While the master is not responsible for the willful wrong of the servant, not done with a view to the master's service or for the purpose of executing his orders, if the servant is authorized to use force against another when necessary in executing his master's orders, and if while executing such orders through misjudgment or violence of temper the servant use more force than is necessary, the master is liable.

Where a master claims exemption from liability for the tortious act of his servant while apparently engaged in executing his orders upon the ground that the servant was in fact pursuing his own purpose without regard to his master's business, and was acting willfully and maliciously, it is ordinarily a question to be determined by the jury.

Plaintiff jumped upon the platform of a baggage car on defendant's road to ride to a place where the cars were being backed to make up a train. Defendant's rules forbade all persons, except certain employes, riding on baggage cars and directed baggagemen to rigidly enforce the rule. As plaintiff's evidence tended to show, defendant's baggageman ordered plaintiff off while the car was in motion. A pile of wood was near the track. Plaintiff replied that he could not get off because of the wood, whereupon the baggagemaster kicked him off, he fell against the wood and then under the cars and was injured. In an action to recover damages, *held*, that the fact that plaintiff was a trespasser was not a defence, and that the evidence was sufficient to authorize the submission of defendant's liability to a jury.

The court charged that if the brakeman acted "willfully and maliciously toward the plaintiff outside of and in excess of his duty" defendant was not liable. He refused to qualify this charge or to charge that it was sufficient to exempt defendant from liability that the act of the brakeman was willful. *Held*, no error.

(Argued January 24, 1876; decided February 1, 1876.)

APPEAL from judgment of the General Term of the Supreme Court in the third judicial department, in favor of plaintiff,

entered upon an order denying a motion for a new trial and directing judgment on a verdict. (Reported below, 3 Hun, 329 ; 5 T. & C., 475.)

This action was brought to recover damages for injuries sustained by plaintiff in consequence of being kicked off of one of defendant's baggage cars by the baggageman.

The transaction resulting in the injury occurred at Norwich, May 3, 1872. The defendant operated a broad-gauge railroad from Binghamton to Norwich and a narrow-gauge road from Norwich to Utica. The passenger train from Binghamton on this occasion as usual ran to the depot at Norwich and transferred the passengers and freight to the Utica train and then backed south on a switch, a distance of about sixty rods, to the round-house to make up the new train which was to run back to Binghamton. The train consisted of the engine, an express car, a baggage and smoking car, one car divided into two compartments and one passenger car. The conductor of the train got off with the passengers at the depot and left it in charge of the baggageman to run back on the switch and make up the new train. While the train was unloading and transferring the passengers at the depot the plaintiff, a boy twelve years old, living near the depot, got on the platform of the baggage and smoking car, at the rear end, to ride down to the round-house. A quantity of wood was piled at one point along near the west side of the track for a distance of over 100 feet. While the train was backing down the track, and when it arrived at the wood pile, the baggageman in charge of the train discovered the plaintiff on the platform and ordered him off. According to the plaintiff's testimony, he replied : " I can't, the wood is right here ; I want you to help me," and thereupon the baggageman kicked him off. He fell against the wood and rolled under the car, the wheel of which passed over and crushed his leg. A printed notice was posted up in the baggage car and another one near where the plaintiff was standing on the platform, as follows : " No person will be allowed to ride on this baggage car except the regular

train men employed thereon. Conductor and baggageman
must see this order strictly enforced." Another printed
notice was contained in the posted time cards as follows:
" Train baggagemen must not permit any person to ride in
the baggage car, except the conductor and news agent con-
nected with the train. Conductor and baggageman will be
held alike accountable for a rigid enforcement of this rule."

At the close of the plaintiff's evidence the defendant's
counsel moved for a nonsuit on the grounds: 1. The plain-
tiff was a trespasser, or wrongfully on the cars of the defend-
ant, and is not entitled to recover. 2. The plaintiff, by his
own negligence, contributed to the accident. 3. Upon the
evidence the defendant was not guilty of any negligence or
wrongful act in reference to the plaintiff; that the acts of
Gow (baggageman), which caused the injury, were not author-
ized by the defendant but were a willful and wanton assault
by Gow upon the plaintiff, and for these acts and their con-
sequences the defendant is not responsible to the plaintiff.
The court denied the motion and ruled that it was a question
for the jury whether the baggageman was there acting within
the authority of the company in putting the boy off, and
whether he acted willfully and wrongfully; to which the
defendant excepted. After the defendant had given evidence
contradicting the plaintiff's testimony, and at the close of the
case, the defendant's counsel renewed his motion for a non-
suit on the same grounds, and also on the ground that no
right of action is made against the defendant and that the
evidence does not warrant a submission of any question of
fact to the jury which could authorize a recovery. The motion
was denied and the defendant excepted. The court then
submitted the following questions to the jury, to which the
defendant also excepted: 1. Did Gow put the boy off the
cars? 2. Was he acting within the authority given him by
the defendant? 3. Was he acting maliciously and in excess
of his authority?

The court then charged the jury. among other things, that
the plaintiff was a trespasser on the car, but if the baggage-

man, nevertheless, in the discharge of his duty, pushed him off the train in an improper manner and at a dangerous place the defendant was liable ; to which the defendant excepted. The court also charged the jury that if the baggageman pushed the boy off the train, and in doing so was acting as the employe of the defendant in good faith in the discharge of a duty he owed the company, the defendant would be liable for the careless and negligent discharge of his duty ; but if he was acting willfully and maliciously toward the plaintiff, outside of and in excess of his duty, then the baggageman alone would be responsible in law for the consequences ; to which the defendant excepted and requested the court to modify the charge or to charge that defendant was not liable if the baggageman acted willfully and wantonly without authority from defendant.    This the court refused.

*Francis Kernan* for the appellant.    Plaintiff was wrongfully on defendant's car and it was not liable for any injury sustained through the carelessness or neglect of its servants. (*Robertson* v. *N. Y. and E. R. R. Co.*, 22 Barb., 91 ; *Terry* v. *N. Y. and E. R. R. Co.*, id., 574 ; *Eaton* v. *D., L. and W. R. R. Co.*, 13 Am. L. Reg. [N. S.], 665.)    The act of the baggageman was an unauthorized, wanton and willful trespass upon plaintiff for which defendant was not liable. (*Wright* v. *Wilcox*, 19 Wend., 343 ; *Isaacs* v. *Third Ave. R. R. Co.*, 47 N. Y., 122, 125–129 ; *Hughes* v. *N. Y. and N. H. R. R. Co.*, 4 J. & S., 222, 225–227 ; *Mali* v. *Lord*, 39 N. Y., 381 ; 47 id., 127 ; *Vanderbilt* v. *R. T. Co.*, 2 Comst., 479–482.)

*E. H. Prindle* for the respondent.    The baggageman in putting plaintiff off the car acted carelessly and negligently for which defendant was liable.    (*Higgins* v. *W.-Tpke. and R. R. Co.*, 46 N. Y., 23 ; *Jackson* v. *Second Ave. R. R. Co.*, 47 id., 274 ; *Isaacs* v. *Third Ave. R. R. Co.*, id., 122 ; *Sanford* v. *Eighth Ave. R. R. Co.*, 23 id., 343.)    Defendant was liable for the acts of its servants performed within the scope

of their authority and in their master's business, even when malicious. (46 N. Y., 27; *Hamilton* v. *Third Ave. R. R. Co.*, 53 id., 27; *Goddard* v. *G. T. R. Co.*, 57 Me., 202; *Hanson* v. *E. and N. Am. R. Co.*, 62 id., 14; Am. L. Reg., No. 3, p. 197.) Plaintiff was guilty of no negligence at the time he was put off. (*Lovett* v. *S. and S. D. R. R. Co.*, 91 Mass., 557; *Holmes* v. *Wakefield*, 12 Al., 580; *Kline* v. *Cent. Pac. R. R. Co.*, 37 Cal., 400; *R. R. Co.* v. *Stout*, 17 Wall., 657; 23 N. Y., 343.) The charge of the judge was as favorable to the defendant as the law would allow. (*Jackson* v. *Second Ave. R. R. Co.*, 47 N. Y., 275.)

ANDREWS, J. There is, at this time, but little conflict of judicial opinion in respect to the general rule by which the liability of a master for the misconduct of his servant, resulting in injury to third persons, is to be tested and ascertained. In *Higgins* v. *The Watervliet Turnpike Company* (46 N. Y., 23) this subject was considered by this court, and the rule was declared to be, that the master was responsible *civiliter* for the wrongful act of the servant causing injury to a third person, whether the act was one of negligence or positive misfeasance, provided the servant was at the time acting for the master, and within the scope of the business intrusted to him. The master is liable only for the authorized acts of the servant, and the root of his liability for the servant's acts is his consent, express or implied, thereto. When the master is to be considered as having authorized the wrongful act of the servant, so as to make him liable for his misconduct, is the point of difficulty. Where authority is conferred to act for another, without special limitation, it carries with it, by implication, authority to do all things necessary to its execution; and when it involves the exercise of the discretion of the servant, or the use of force towards or against another, the use of such discretion or force is a part of the thing authorized, and when exercised becomes, as to third persons, the discretion and act of the master, and this, although the servant departed from the private instruc-

tions of the master, provided he was engaged at the time in doing his master's business, and was acting within the general scope of his employment. It is not the test of the master's liability for the wrongful act of the servant, from which injury to a third person has resulted, that he expressly authorized the particular act and conduct which occasioned it. In most cases where the master has been held liable for the negligent or tortious act of the servant, the servant acted not only without express authority to do the wrong, but in violation of his duty to the master.

It is, in general, sufficient to make the master responsible that he gave to the servant an authority, or made it his duty to act in respect to the business in which he was engaged when the wrong was committed, and that the act complained of was done in the course of his employment. The master in that case will be deemed to have consented to and authorized the act of the servant, and he will not be excused from liability, although the servant abused his authority, or was reckless in the performance of his duty, or inflicted an unnecessary injury in executing his master's orders. The master who puts the servant in a place of trust or responsibility, or commits to him the management of his business or the care of his property, is justly held responsible when the servant, through lack of judgment or discretion, or from infirmity of temper, or under the influence of passion aroused by the circumstances and the occasion, goes beyond the strict line of his duty or authority and inflicts an unjustifiable injury upon another. But it is said that the master is not responsible for the willful act of the servant. This is the language of some of the cases, and it becomes necessary to ascertain its meaning when used in defining the master's responsibility.

The case of *McManus* v. *Crickett* (1 East, 106) turned upon the form of the action and the distinction between trespass and case, but Lord Kenyon, in pronouncing the judgment of the court, said: "Where a servant quits sight of the object for which he was employed, and, without having in

view his master's orders, pursues that which his own malice suggests, his master will not be liable for such acts." This language was cited with approval in *Wright* v. *Wilcox* (19 Wend., 343), and the master was held not to be responsible where the servant, in driving his master's wagon along the highway, willfully whipped up his horses while the plaintiff's son, a young lad, was standing between the front and back wheels, attempting, with the implied permission of the servant, to get into the wagon, in consequence of which the boy was thrown down, run over and injured. The servant was cautioned by a bystander that if he did not stop he would kill the boy. The court, in the opinion delivered, assumed that the evidence showed that the servant whipped up the horses with a willful design to throw the boy off. The act of the servant was imminently dangerous, and it might reasonably be inferred from the evidence that he designed the injury which resulted from it. " The law," said COWEN, J., " holds such a willful act a departure from the master's business." So in *Vanderbilt* v. *The Richmond Turnpike Company* (2 Comst., 479), the master of the defendant's boat intentionally ran into the boat of the plaintiff, and the court held that this was a willful trespass of the master for which the defendant was not liable. In *Lyons* v. *Martin* (8 Ad. & El., 512) it was held that where a servant merely authorized to distrain cattle damage-feasant, drives cattle from the highway into his master's close, and there distrains them, the master is not liable. In *Mali* v. *Lord* (39 N. Y., 381) the act complained of was an illegal imprisonment of the plaintiff by the servant of the defendant, and the court held that the authority to do the act could not be implied from the general employment of the servant. The imprisonment, assuming that the suspicion upon which it was made was well founded, was illegal. The master could not lawfully have detained the defendant if he had been present, and the court were of the opinion that the servant could not be said to be engaged in his master's business when he assumed to do what the master could not have done himself.

(See, also, *Bolingbroke* v. *The Local Board, etc.,* L. R., 9 C. P., 575.) It is quite useless to attempt to reconcile all the cases. The discrepancy between them arises not so much from a difference of opinion as to the rule of law on the subject as from its application to the facts of a given case.

It seems to be clear enough from the cases in this State that the act of the servant causing actionable injury to a third person does not subject the master to civil responsibility in all cases where it appears that the servant was at the time in the use of his master's property, or because the act, in some general sense, was done while he was doing his master's business, irrespective of the real nature and motive of the transaction. On the other hand, the master is not exempt from responsibility in all cases on showing that the servant, without express authority, designed to do the act or the injury complained of. If he is authorized to use force against another when necessary in executing his master's orders, the master commits it to him to decide what degree of force he shall use; and if, through misjudgment or violence of temper, he goes beyond the necessity of the occasion, and gives a right of action to another, he cannot, as to third persons, be said to have been acting without the line of his duty, or to have departed from his master's business. If, however, the servant, under guise and cover of executing his master's orders, and exercising the authority conferred upon him, willfully and designedly, for the purpose of accomplishing his own independent, malicious or wicked purposes, does an injury to another, then the master is not liable. The relation of master and servant, as to that transaction, does not exist between them. It is a willful and wanton wrong and trespass, for which the master cannot be held responsible. And when it is said that the master is not responsible for the willful wrong of the servant, the language is to be understood as referring to an act of positive and designed injury, not done with a view to the master's service, or for the purpose of executing his orders. In this view, the judge at the trial correctly refused to qualify his charge, or to charge that it was

sufficient to exempt the defendant from liability that the act of the brakeman in putting the plaintiff off the car was willful. He had already charged that if the brakeman acted "willfully and maliciously towards the plaintiff, outside of and in excess of his duty," in putting him off of the car, the defendant was not liable. If the counsel intended to claim that the defendant was exempt from responsibility if the brakeman acted willfully, although without malice, the point was not well taken. That the brakeman designed to put the plaintiff off the car was not disputed, and this was consistent with the authority and duty intrusted to him. But a willful act which will exempt a master from liability for the tort of his servant, must be done outside of his duty and his master's business. The charge was, therefore, strictly correct, and the exception was not well taken.

Neither was the defendant entitled to have the court rule, as matter of law, that, upon the circumstances as shown by the evidence on the part of the plaintiff, the defendant was not responsible. It is conceded that the removal of the plaintiff from the car was within the scope of the authority conferred upon the baggageman. The plaintiff had no right to be there. He was not a passenger or servant, and had no express or implied permission to be upon the car. The brakeman, in kicking the boy from the platform, acted violently and unreasonably, and to do this while the car was in motion, and when the space between it and the wood-pile was so small, was dangerous in the extreme. But the court could not say from the evidence that the brakeman was acting outside of and without regard to his employment, or designed to do the injury which resulted, or that the act was willful within the rule we have stated. If the master, when sued for an injury resulting from the tortious act of his servant while apparently engaged in executing his orders, claims exemption upon the ground that the servant was, in fact, pursuing his own purposes, without reference to his master's business, and was acting maliciously and willfully, it must, ordinarily, be left to the

jury to determine this issue upon a consideration of all the facts and circumstances proved. (See *Jackson* v. *The Second Ave. R. R. Co.*, 47 N. Y., 274.) There may be cases where this rule does not apply, and where the court would be justified in taking the case from the jury; but where different inferences may be drawn from the facts proved, and when, in one view, they may be consistent with the liability of the master, the case must be left to the jury. The fact that the plaintiff was a trespasser on the cars is not a defence. The lad did not forfeit his life, or subject himself to the loss of his limbs, because he was wrongfully on the car. The defendant owed him no duty of care by reason of any special relation assumed or existing between the company and him, but he was entitled to be protected against unnecessary injury by the defendant or its servants in exercising the right of removing him, and especially from the unnecessary and unjustifiable act of the brakeman by which his life was put in peril, and which resulted in his losing his limb. (*Sanford* v. *Eighth Ave. R. R. Co.*, 23 N. Y., 343; *Lovett* v. *Salem, etc., R. R. Co.*, 9 Allen, 557; *Holmes* v. *Wakefield*, 12 id., 580.)

No error of law was committed on the trial, and the judgment of the General Term should be affirmed, with costs.

All concur.

Judgment affirmed.