DOROTHY FORD, as Administratrix, etc., of DENNIS FORD, Deceased, Appellant, *v.* THE GRAND UNION COMPANY, Respondent.

Third Department, March 15, 1934.

*O'Connell Brothers* [*B. Loyal O'Connell* of counsel], for the appellant.

*Patrick J. Tierney,* for the respondent.

HEFFERNAN, J. On March 8, 1932, respondent, a Delaware corporation, was engaged in conducting a meat and grocery store, as part of its chain system in the easterly portion of the first floor and basement of a building located on the corner of Main and Flagg streets in the village of Dannemora, N. Y. Main street runs easterly and westerly and Flagg street extends southerly from Main street. The east wall of the building abutted on Flagg street; the north wall abutted on Main street.

In its answer respondent admits that it had the exclusive custody, control and possession of these premises. It had installed one Legnard in charge thereof, or, so the jury might have found, as its representative and manager.

On the day in question, Benway, one of respondent's employees, invited a young man named Palmer into the store. The latter had in his possession a .22 caliber rifle. Benway examined the gun and, after some conversation, he, Palmer, Gonyea, another employee, and Legnard went to the basement of the premises. There a piece of board was selected as a target, and placed upon a bar which ran across a set of double doors opening on Flagg street. After their preparations were completed the four engaged in target shooting. The discharged bullets penetrated the target, the doors and passed out into Flagg street. Some of them were afterwards found imbedded in buildings on the opposite side of the street.

While the shooting was in progress, Dennis Ford was walking southerly on Flagg street in the immediate vicinity of the store and, while so doing, was shot and instantly killed by one of the bullets. Who fired the fatal shot is not known. His widow, as the admin-

istratrix of his estate, seeks, in this action, to charge respondent with liability for the negligent or tortious act of Legnard in permitting the premises to be used for an inherently dangerous purpose. Respondent claims that it is immune from responsibility on the ground that when the shooting occurred Legnard was not acting within the scope of his employment or engaged in its business and that consequently the relation of master and servant did not exist as to the wrongful act.

In her pleading appellant alleges two causes of action, one based on nuisance and the other on negligence. At the close of her case she was nonsuited, and from that determination she has appealed.

In fairness to the learned trial justice it seems to us that appellant's counsel, unwittingly no doubt, led him into error by acquiescing in the suggestion that nuisance had to be established to sustain a recovery. The target practice in question was an isolated act. Concededly none of respondent's officers or agents, apart from Legnard, had any knowledge of the act prior to its commission. Not infrequently the line of demarcation between nuisance and negligence is elusive. While it is not always necessary that the act complained of should be habitual or periodical, a nuisance, as a general rule, involves the idea of continuity or recurrence. Doubtless some degree of permanence is an essential element of the conception of nuisance. In our opinion the act in question was not so continuous and persistent as to ripen into a nuisance.

In reviewing the ruling of the trial court, appellant is entitled not only to the most favorable interpretation of the testimony adduced by her, but to the benefit, as well, of the most favorable inferences which may reasonably be drawn from that testimony; and judgment of nonsuit may not be sustained in any case in which, by any logical process of reasoning, an issue of fact may be found. Therefore, in the consideration of this appeal, which involves the review of testimony to be construed in the light most favorable to appellant, and with every reasonable intendment cast into the scales in her favor, let us analyse the status of the employer and employee in the operation of this store.

Respondent, being in the exclusive possession of property abutting upon a public highway, owed an affirmative duty to wayfarers to prohibit any use of its premises which might imperil life, limb or property. A pedestrian using a public highway " walks by a faith justified by law, and if his faith is unfounded and he suffers an injury, the party in fault must respond in damages." (*Davenport* v. *Ruckman*, 37 N. Y. 568.)

Respondent selected Legnard as its representative and placed him in charge of its property. Surely his duties were not limited

merely to the purchase and sale of merchandise. Part of his employment was to see that the obligations imposed by law upon respondent, as the custodian of property adjacent to a public highway, were fulfilled and that the premises were not used in such a manner as to become a source of danger to the traveling public. He had plenary authority in his representative capacity to forbid the discharge of firearms from the store into the public highway. His failure to prevent this occurrence resulted in the violation of a duty which respondent owed to the public. Not only did he fail in his obligation but he actively participated in a deed which resulted fatally to appellant's intestate.

The law holds the employer for what the employee does or omits in conducting the employer's business, because the employer has voluntarily substituted the management and supervision of the employee for his own. A corporation is answerable for the torts of its employees in the same cases and in the same manner and form of action as other employers. (14-a C. J. 765–768.)

The doctrine of the liability of the master for the wrongful acts of his servant is predicated upon the maxim *respondeat superior*. In fact it rests upon the doctrine of agency. (*Hardeman* v. *Williams*, 150 Ala. 415.) By legal intendment the act of the employee becomes the act of the employer, the individuality of the employee being identified with that of the employer. The latter is deemed to be constructively present; the act of the employee is his act; and he becomes accountable as for his own proper act or omission. Ultimately, like every other rule of law, the principle finds its foundation in public policy and convenience. (18 R. C. L. 786, 787.) If the employer engages incompetent or untrustworthy agents it is his fault; and whether the injury to third persons is caused by the negligence or positive misfeasance of the agent, the maxim *respondeat superior* applies, provided only that the agent was acting at the time for the principal and within the scope of the business intrusted to him. (*Higgins* v. *Watervliet Turnpike Co.*, 46 N. Y. 23.) An employer may be held accountable for the wrongful act of his employee although he had no knowledge thereof, or disapproved it, or even had expressly forbidden it. And so the employer may be made liable for acts done in violation of his instructions. (*Wood* v. *Saunders*, 228 App. Div. 69; *Cosgrove* v. *Ogden*, 49 N. Y. 255; *McLoughlin* v. *N. Y. Edison Co.*, 252 id. 202; 39 C. J. 1285, 1286.) To exonerate the employer under such circumstances would virtually annul the doctrine of *respondeat superior*, a doctrine designed for the protection of innocent third persons. We agree with the contention of respondent that the primary test to determine the master's liability for the act of his

servant under the doctrine of *respondeat superior* is whether the act was within the scope of his employment. Expressions equivalent to scope of employment, furtherance of the employer's interest and phrases of like import are not susceptible of precise or accurate definition. Each case must be determined with a view to the surrounding circumstances — the character of the employment and the nature of the wrongful act. Whether the act was or was not such as to be within the employment's scope is ordinarily one of fact for the jury's determination. (*Sharp* v. *Erie R. R. Co.*, 184 N. Y. 100; *Hickson* v. *Walker Co.*, 110 Conn. 604; *Neallus* v. *Amusement Co.*, 126 Me. 469.) Acting within the general scope of his employment means while on duty, and not that the servant was authorized to do such acts. (*Cook* v. *Southern R. R. Co.*, 128 N. C. 333, 336.) So also the act may be within the scope of the employment although it is not necessary for the proper performance of the servant's duty to his master, or although it is not in the interest of the master or in the furtherance of his business, or although it may be an obstruction and hindrance to the master's business. (39 C. J. 1283; *McCauley* v. *Hutkoff*, 20 Misc. 97.)

Tested by these rules and in the light of the evidence contained in the record, can it be said as a matter of law that at the time of the shooting Legnard was not acting within the scope of his employment? We think not.

It is elemental that every person in the management of his affairs shall so conduct them as not to cause an injury to another. " The master who puts the servant in a place of trust or responsibility, or commits to him the management of his business or the care of his property, is justly held responsible when the servant, through lack of judgment or discretion, or from infirmity of temper, or under the influence of passion aroused by the circumstances and the occasion, goes beyond the strict line of his duty or authority and inflicts an unjustifiable injury upon another." (*Rounds* v. *Delaware, Lackawanna & Western R. R. Co.*, 64 N. Y. 129.)

Responsibility is not limited to those acts which promote the objects of the employment. Thus it has been held that an employing company will be liable for the act of its engineer in sounding a whistle or operating a blowoff cock for the purpose of frightening children. (*Alsever* v. *Minneapolis & St. Louis Railroad Company*, 115 Iowa, 338.) Similarly, it has been held that a railroad company is liable for the act of its engineer, in whose custody it has placed signal torpedoes, in placing one on the track, in dangerous proximity to bystanders, and moving the engine over it for his own amusement, in consequence of which one of the bystanders is injured. (*Euting* v. *Chicago & Northwestern Railway Co.*, 116 Wis.

13; *Pittsburg, Cincinnati & St. Louis R. Co.* v. *Shields,* 47 Ohio St. 387.) It has been held that a telegraph company is liable for an insult offered by the messenger by which it is delivering a telegram to the addressee in her own home, although it grows out of a matter purely personal to the messenger. (*Buchanan* v. *Western Union Telegraph Co.,* 115 S. C. 433.) A corporation engaged in selling surgical appliances and prescribing for persons suffering from malformed limbs is responsible for an indecent assault upon a female patient by an employee delegated to diagnose and prescribe for her malformed limbs, in a private apartment. (*Stone* v. *Eisen Co.,* 219 N. Y. 205.)

The pecuniary injury sustained by appellant in the instant case was made possible because respondent placed Legnard in charge of its property. In the management of that property the law placed upon respondent a duty of care measured by whatever public safety required. It cannot shield itself from liability because Legnard was faithless to his trust. Whether discharging the gun under the circumstances disclosed here was a negligent act, and whether the failure of Legnard to enjoin the same was an omission within the course of his employment, are questions for the determination of a jury. The fact that the negligence of Palmer, not an employee of respondent, co-operated with that of Legnard in inflicting the injury does not exempt respondent from liability. (39 C. J. 1268, 1269; *Chicago* v. *O'Malley,* 196 Ill. 197.) Its responsibility is bottomed on the negligence of Legnard.

It is said that this action is without precedent, and, therefore, not maintainable. Precedent is merely a guide; its absence never a bar. Facts change; principles are changeless.

The judgment should be reversed and a new trial granted, with costs to appellant to abide the event.

HILL, P. J., RHODES, McNAMEE and BLISS, JJ., concur.

Judgment reversed on the law and new trial granted, with costs to the appellant to abide the event.