DOROTHY FORD, as Administratrix, etc., of DENNIS FORD, Deceased, Respondent, *v.* THE GRAND UNION COMPANY, Appellant.

Third Department, January 23, 1935.

*Patrick J. Tierney*, for the appellant.

*O'Connell Brothers* [*B. Loyal O'Connell* of counsel], for the respondent.

RHODES, J. The verdict of $50,000 was large, but the evidence supports and justifies it. Deceased was thirty-one years of age, employed as a structural iron worker, in the erection of a building at Dannemora prison. His wages were sixty-three dollars a week. During his married life he had always been employed as an iron worker, worked steadily, never had been sick, nor had a doctor, was a man of good habits, devoted to his family, turning over to his wife forty dollars to forty-five dollars a week. His wife was of the age of thirty, and his four children were of the ages of six years, four years, two years, and five months, respectively.

He had a life expectancy of over thirty-four years. His wife had an even greater expectancy.

The learned trial justice reduced the verdict to $32,250. No reason therefor is given for such substitution of the judgment of the justice for that of the jury, except that it is " excessive." We are unable to say that it is too much. The mere fact that the verdict is large does not make it excessive. Here the facts furnish ample support for the amount fixed by the jury. We cannot say that $32,250 is a more correct estimate of the damages than $50,000. Unless the verdict lacks proper support in the evidence, or is so large that its excessiveness is clearly apparent, the court should not substitute its opinion for that of the triers of the facts. The assessment of damages is a function of the jury which the court should not usurp.

BLISS and HEFFERNAN, JJ., concur; HILL, P. J., dissents as to the reversal of the order reducing the verdict, and the reinstatement of the verdict at the amount fixed by the jury, and votes to affirm the judgment and order and the order reducing the verdict; CRAPSER, J., dissents and votes to dismiss the complaint as matter of law, with an opinion.

CRAPSER, J. (dissenting). On March 8, 1932, appellant, a Delaware corporation, was engaged in conducting a meat and grocery store, as part of its chain system, in the easterly portion of the first floor and basement of a building located on the corner of Main and Flagg streets in the village of Dannemora, N. Y. Main street runs easterly and westerly and Flagg extends southerly from Main street. The east wall of the building abutted on Flagg street; the north wall abutted on Main street.

On the day in question, Benway, one of appellant's employees, invited a young man named Palmer into the store. The latter had in his possession a .22 calibre rifle. Benway examined the gun and, after some conversation, he, Palmer, Gonyea, another employee, and Legnard went to the basement of the premises. There a piece of board was selected as a target, and placed upon a bar which ran across a set of double doors opening on Flagg street. After their preparations were completed the four engaged in target shooting. The discharged bullets penetrated the target and the doors and passed out into Flagg street. Some of them were afterwards found imbedded in buildings on the opposite side of the street.

While the shooting was in progress, Dennis Ford was walking southerly on Flagg street in the immediate vicinity of the store and, while so doing, was shot and instantly killed by one of the bullets. Five shots in all were fired. Who fired the fatal shot is not known.

The basement was occupied for heating purposes and the storage of goods and was not open for the general public, being used only by the employees of the defendant and persons delivering merchandise to the store.

The grocery department was in charge of one Legnard and the meat department was in charge of one Benway. Gabriel Corbiere was assistant superintendent of the grocery department of the store; he had supervision over nineteen stores and he visited this store from one to three times a week. Legnard could employ help in the Dannemora store but only with the approval of Corbiere. Henry Gleason was assistant meat superintendent for the defendant and had the Dannemora meat department under his charge and visited the store for the purpose of such supervision.

This case was before this court to review the granting of defendant's motion for a nonsuit, and the dismissing of the complaint on the merits, and an opinion was written reversing said judgment on appeal (which opinion is reported in 240 App. Div. 294). I did not participate in that decision. This court held that, whether the discharging of the gun under the circumstances disclosed in the case was negligence, and whether the failure of Legnard to enjoin the same was an omission within the course of his employment, were questions for the determination of the jury.

There are two causes of action set forth in the complaint, the *first* is in nuisance; the *second* is in negligence.

For the acts of a servant, within the general scope of his employment, while engaged in his master's business, and done with a view to the furtherance of that business and the master's interests, the master will be responsible whether the act be done negligently,

wantonly, or even willfully. But, if the servant goes outside his employment and without regard to his service, acting maliciously or in order to effect some purpose of his own, wantonly commits a trespass, or causes damage to another, the master is not responsible. (*Mott* v. *Consumers' Ice Co.*, 73 N. Y. 543, 547; *Girvin* v. *N. Y. C. & H. R. R. R. Co.*, 166 id. 289.)

The matter was submitted to the jury by the trial court on the theory of negligence, the court saying: "Specifically, the plaintiff's claim is: *First*, that the target shooting in the basement of his [defendant's] store which you have heard described in the plaintiff's proof, was the proximate cause of Ford's death. *Second*, that the target shooting constituted a negligent act."

The defendant is not an insurer, but it was under obligation to use reasonable diligence to prevent an injury to a person in the street, where it had cause to believe such injury was likely to occur.

The act of the shooting at the target by the employees was an act outside the scope of their duties and employment, and is not to be presumed, and, therefore, negligence on the part of the defendant in failing to prevent the act could not be shown by proof of a single act of that kind, where there was nothing to show that defendant had any reason to suppose the act would be committed. Negligence on the part of the defendant is the basis of its liability and a mere failure to prevent a single and dangerous act would not prove its existence. (*Fletcher* v. *Baltimore & Potomac R. R. Co.*, 168 U. S. 135.)

The injury in this case was unexpected, extraordinary and unusual, although failure to prevent it cannot be said to be negligence without bringing home knowledge to the defendant prior to its occurrence. A single isolated incident, as in this case, is not in itself, although serious injury results therefrom, sufficient to sustain a verdict in favor of the plaintiff and against the defendant. It was necessary for the plaintiff to prove more than one occurrence. (*Swinarton* v. *Le Boutillier*, 7 Misc. 639; affd., 148 N. Y. 752; *Hogle* v. *Franklin Manufacturing Co.*, 199 id. 388.)

The judgment and the order reducing the verdict should be reversed and the complaint dismissed as a matter of law.

Order reducing verdict reversed on the facts, with costs, and verdict reinstated; judgment modified accordingly and as so modified the judgment and order denying motion for new trial affirmed, with costs.