**Tat–Yik Jarvis KA and Amanda Beth Ka, Appellants–Plaintiffs,**

v.

**CITY OF INDIANAPOLIS, Appellee–Defendant.**

No. 49A02–1103–CT–188.

Court of Appeals of Indiana.

Aug. 17, 2011.

Publication Ordered Sept. 26, 2011.

David E. Dearing, Indianapolis, IN, Attorney for Appellants.

Gregory R. Clark, Assistant Corporation Counsel, Office of Corporation Counsel, Indianapolis, IN, Attorney for Appellee.

## OPINION

BAILEY, Judge.

### Case Summary

Tat–Yik Jarvis Ka ("Jarvis") and Amanda Beth Ka ("Amanda") (collectively, "the Kas") sued the City of Indianapolis ("the City") for negligence, negligent infliction of emotional distress, trespass, and nuisance after sewage from a City pipe backed up into their home. The trial court granted summary judgment in favor of the City on all of the Kas' claims, and they now appeal,

raising the single issue of whether the trial court erred by granting the City's motion for summary judgment. We affirm.

### Facts and Procedural History

On April 25, 2007, a City contractor ("United Water")[1] sent out a cleaning crew to clean the sewers on Fall Creek Drive in Indianapolis, near the Kas' residence.[2] The job was intended to be a multi-day effort, so the crew cleaned particular segments of the line, but stopped before finishing the entirety. The next day, instead of returning to finish the line on Fall Creek Drive, the crew was sent to another area.

While the crew was cleaning on April 25, the Kas were at home with their newborn and Amanda's mother when they heard a noise and began to smell sewage. Jarvis went outside and spoke with a crew member, who told them that they were cleaning the sewers. Aside from the foul smell, the Kas did not have any other problems with their sewer system that day.

The following day, however, at around 3:00 p.m., the Kas noticed that their toilets were not flushing properly and by 6:00 p.m., sewage was backing up into their home. Water emanated from the Kas' toilet and shower on the house's main level, and fell like a "little waterfall" into the

basement. Appellant App. p. 53. Despite their best efforts with a sump pump, the house sustained extensive property damage. Amanda suffered physical injury carrying the couple's newborn baby and personal belongings while she evacuated the house, and the ordeal also caused her emotional suffering. At 8:30 p.m., the Township Coordinator arrived to assess the problem, and called for a United Water crew, who broke the blockage at approximately 11:40 p.m.

The Kas sued the City on April 27, 2009.[3] The parties conducted several depositions, two of which elicited testimony from sewer engineering experts. Both experts concluded that the particular portion of the sewer line that was blocked has structural damage that has existed either since installation or developed over the years that may have contributed to the blockage. On November 26, 2010, the City moved for summary judgment on all of the Kas' claims, and on February 2, 2011, the trial court granted the City's motion. The Kas now appeal.

### Discussion and Decision[4]

#### Standard of Review

"The purpose of summary judgment is to resolve quickly and inexpensively those

---

1. Specifically, the City contracted with the White River Environmental Partnership, LAH White River Corporation, JMM White River Corporation, IWC Services, Inc., IWC Resources Corporation, United Water Services, Inc., Lyonnaise American Holding, Inc., and United Water Resources, Inc.

2. Per its agreement with the City, United Water performs "all services necessary" for the proper and effective operation and maintenance of the sewer, and specifically charged United Water with sewer cleaning activities. Appellee's App. p. 124–25.

3. This is the date of their second amended complaint. The Kas also sued United Water, but it is not a party to this appeal.

4. The City points out, and the Kas concede in their reply brief, that the Kas did not follow Rule 50 of the Indiana Rules of Appellate Procedure because they did not include in their appendix all the materials necessary to resolve the issues presented. Such an omission can be fatal to an appeal. *See Hughes v. King*, 808 N.E.2d 146, 148 (Ind.Ct.App.2004) (dismissing an appeal of the grant of a summary judgment motion when the appellant's filed a deficient appendix). However, the City provided the missing materials, and thus we reach the merits of the appeal. Additionally, we note that the Kas' brief does not contain the appealed order pursuant to Appellate Rule 46(A)(10) and remind counsel of the need to follow the Appellate Rules.

disputes in which no genuine issue of material fact exists and in which one party is entitled to a judgment as a matter of law." *Bailey v. Shelter Mut. Ins. Co.*, 615 N.E.2d 508, 509 (Ind.Ct.App.1993). A trial court's grant of summary judgment is "clothed with a presumption of validity" and the appellant has the burden of demonstrating the trial court erred. *Lytle v. Ford Motor Co.*, 696 N.E.2d 465, 468 (Ind.Ct.App. 1998), *trans. denied.* However, we must carefully scrutinize the trial court's decision to ensure that the non-prevailing party was not improperly denied his day in court. *Id.*

On review of a trial court's decision to grant or deny summary judgment, this Court applies the same standard as the trial court. *Wank v. Saint Francis College,* 740 N.E.2d 908, 910 (Ind.Ct.App. 2000), *trans. denied.* Pursuant to Indiana Trial Rule 56(C), summary judgment is appropriate when there are no genuine issues of material fact and when the moving party is entitled to judgment as a matter of law. "A genuine issue of material fact exists where facts concerning an issue which would dispose of the litigation are in dispute or where the undisputed facts are capable of supporting conflicting inferences on such an issue." *Mahan v. American Standard Ins. Co.,* 862 N.E.2d 669, 675 (Ind.Ct.App.2007), *trans. denied* (quoting *Scott v. Bodor, Inc.,* 571 N.E.2d 313, 318 (Ind.Ct.App.1991)).

The party moving for summary judgment bears the burden of making a prima facie showing that there are no genuine issues of material fact and that the movant is entitled to judgment as a matter of law. *Markley Enterprises, Inc. v. Grover,* 716 N.E.2d 559, 564 (Ind.Ct.App.1999).

"A summary judgment is appropriate where the moving party has negated at least one element of plaintiff's claims." *Brannon v. Wilson,* 733 N.E.2d 1000, 1002 (Ind.2000). All evidence is construed in favor of the opposing party and all doubts as to the existence of a material issue must be resolved against the moving party. *Mahan,* 862 N.E.2d at 675. However, once the movant has met his burden of going forward under Trial Rule 56(C), the nonmovant must come forward with sufficient evidence demonstrating the existence of genuine factual issues, and if the nonmovant fails to meet his burden and the law is with the movant, summary judgment should be granted. *Id.* at 675–76.

### Negligence

#### Constructive Notice

■■■ The Kas assert that the trial court erred by granting the City's motion for summary judgment. To succeed on a claim of negligence, a plaintiff must show: (1) a duty owed to the plaintiff by the defendant; (2) a breach of that duty by allowing conduct to fall below the applicable standard of care; and (3) a compensable injury proximately caused by defendant's breach of duty. *Schmitt v. City of Evansville,* 868 N.E.2d 1127, 1128 (Ind.Ct. App.2007). A city is not strictly liable for injuries resulting from defects in the city's infrastructure, and is only liable when it had actual or constructive knowledge of the defect.[5] *Id.* at 1129. Constructive knowledge of a defect means that the defect might have been discovered by the exercise of ordinary care and diligence. *Templeton v. City of Hammond,* 679 N.E.2d 1368, 1372 (Ind.Ct.App.1997) (citing *Galbreath v. City of Logansport,* 151

---

5. A municipality is not liable if a loss results from the "[f]ailure to make an inspection, or making an inadequate or negligent inspection, of any property, other than the property of a government entity, to determine whether the property complied with or violates any law or contains a hazard to health or safety." Ind.Code § 34–13–3–3(12). Neither party disputes that the City is responsible for the sewer line that suffered the blockage.

Ind.App. 291, 279 N.E.2d 578, 580 (1972)). "In other words, if the defect is latent, violation of ordinary care and diligence cannot be found to exist." *Gilson v. City of Anderson*, 141 Ind.App. 180, 185, 226 N.E.2d 921, 924 (1967). If the City had actual or constructive knowledge of an unsafe condition, there is a breach of the duty of care if the City does not act. *State v. Bouras*, 423 N.E.2d 741, 745 (Ind.Ct. App.1981). However, where there is neither actual nor constructive knowledge of a dangerous condition so that the reasonably prudent person would not have been alerted to action, then there is no negligence. *Id.*

In *Schmitt*, we recently addressed the issue of constructive knowledge when a sewer connection to a residence was defective and sewage backed up into the home. 868 N.E.2d at 1128. In that case, the plaintiff had not complained of any problems before the incident, the sewer was underground and not subject to observation, the defect had existed for only three to six months, and there was no other evidence that the municipality knew or should have known of the defective condition. *Schmitt*, 868 N.E.2d at 1129. Given these circumstances, we concluded that the municipality lacked constructive knowledge of the defect so as to be charged with negligence. *Id.*

Similarly, in *Czaja v. City of Butler*, 604 N.E.2d 9 (Ind.Ct.App.1992), a case initiated after a tree fell on a car during a storm, we also concluded that a municipality lacked constructive knowledge that the tree was susceptible to falling. *Id.* at 10. There, we noted the lack of outward signs of tree rotting, that the plaintiffs themselves stated that they had no reason to believe the tree was likely to fall, that the storm was especially ferocious, and that a city inspector had noticed green foliage on the tree two years earlier. *Id.* We concluded that the municipality had sufficient-

ly established the lack of constructive knowledge, and affirmed summary judgment in its favor despite evidence from the plaintiffs that branches had previously fallen and the sidewalk had buckled due to roots. *Id.* at 11.

These holdings should be contrasted with cases such as *Spier v. City of Plymouth*, 593 N.E.2d 1255 (Ind.Ct.App.1992), *abrogated on other grounds by Reeder v. Harper*, 788 N.E.2d 1236 (Ind.2003), and *Tucher v. Brothers Auto Salvage Yard, Inc.*, 564 N.E.2d 560, 564 (Ind.Ct.App. 1991), *trans. denied.* In *Spier*, we found that a genuine issue of material fact existed as to constructive knowledge of a rusted signpost after it broke and fell on a child. *Spier*, 593 N.E.2d at 1258. In reaching that finding, we noted that the post had rusted through at one point around its circumference, that mulch had been placed around the signpost and the post had rusted immediately above the mulch, that a number of signposts had rusted and fallen over the years, and the municipality had abandoned its maintenance and inspection program. *Spier* at 1258–59. In *Tucher*, gravel on a road caused a motorcycle accident, and, after two eyewitnesses testified to the presence of gravel both the day before the accident and several days before the accident, we held that summary judgment was inappropriate and the issue of the municipality's constructive knowledge was for the jury. 564 N.E.2d at 564.

### Designated Materials

The City's designated materials include an engineer's report stating that the sewer line had passed infiltration, air, and deflection tests after the sewer was constructed. Also included was an affidavit from the sewer construction company's Senior Vice President affirming that all materials used in the sewer construction project were of the character, quantity, and quality required by the plans, drawings, and specifi-

cations, and that the work was done in conformity with the contract. The parties submitted portions of the City's agreement with United Water, which provided that United Water was to perform "all services necessary" for the proper and effective operation and maintenance of the sewer, and specifically charged United Water with sewer cleaning activities, including televising the lines.[6] Appellee's App. p. 124–25. The agreement also contained the following clause:

> The Contractor, through the Collection System Manager, shall timely advise the CCO[7] of any and all conditions, circumstances, issues, suggestions, recommendations, and the like relating to the operation and maintenance of the Collection System and the Dam which are either required by the terms hereof to be brought, or which the Contractor may reasonably believe should be brought, to the attention of the City as the owner of the Collection System and the Dam. In this regard, the Contractor shall at all times bring to the attention of the City all matters of which the Contractor is aware materially affecting the safe, professional, and cost efficient operation and maintenance of the Collection System and the Dams.

Appellee's App. p. 124.

The City included in its materials an affidavit from Steven Stahley, the City's contract compliance officer for the United Water contract, in which he affirmed that United Water had never informed the City of any defects in the sewer lines in the area of Fall Creek Drive and Halsey Drive. Stahley further affirmed that even after United Water televised the lines following the blockage, United Water informed the City that they found no problems, the lines were functioning properly, and no further action was needed. Both

Jarvis and Amanda testified that they had not experienced any problems with their sewer prior to April 25, 2007.

We think that the case here is more akin to *Schmitt* and *Czaja*. In those cases, the damaged condition was hidden and not subject to ready observation, like here. While visibility is not always dispositive, *Spier*, 593 N.E.2d at 1258 n. 1 (citing *City of Indianapolis v. Scott*, (1880) 72 Ind. 196, and *City of Columbia v. Langohr*, (1898), 20 Ind.App. 395, 50 N.E. 831), we also observe, similar to *Schmitt* and *Czaja*, that the plaintiffs had never had a problem with the sewer before the accident. Additionally, an engineer performed three tests shortly after construction, and the City received assurances from the sewer construction company that everything was to specification. Unlike in *Spier* where the municipality's maintenance program was suspended, the City contracted with United Water to perform "all services necessary" for the proper and effective operation and maintenance of the sewer, and never received notice of a problem with the line on Fall Creek Drive. Even after the blockage, United Water informed the City that it had found no problems and that the lines worked properly. Given the maintenance program the City had in place through United Water, the lack of visual evidence suggesting damage, and no history of complaints, we think that the City established the lack of a genuine issue of material fact as to its constructive knowledge.

To rebut the City's showing, the Kas highlighted the written reports and deposition testimonies of two experts, Martin Mann ("Mann") and Phil Corlew ("Corlew"). Mann testified that certain engineering tests would have revealed the presence of the sewer damage, but he

---

**6.** Televising sewer lines is performed by placing a video camera into the sewer line.

**7.** Contract compliance officer.

stated that he did not have an opinion on whether the City had adequate time to inspect the sewers, did not know how often a sewer should be cleaned, and was not aware of what the level of reasonable care was as to the City's responsibility to evaluate the sewer prior to this blockage. Corlew stated that the "best" method of preventing problems is testing shortly after installation but after the backfill has settled and did not offer an opinion concerning later testing of a working line, instead opining that "it depends" and is a "policy decision" since a working sewer would be a lower priority for municipalities and they cannot afford to fix all problems. Appellants' App. p. 90.

In short, the evidence from Mann and Corlew sheds no light as to whether the City should have been forewarned in this instance that sewage would backup into the Kas' home in light of its existing program of maintenance and the lack of other cues. Although the experts stated that certain tests would have revealed defects, they did not opine as to how often these tests should be performed after construction, if at all. Instead, Mann refused to offer and opinion on what he thought was reasonable, and Corlew stated that later testing "depends" or is a policy decision" and even acknowledged that working sewers are lower priorities and that munici-

palities cannot afford to fix all problems. Additionally, although Corlew stated that early testing was the "best" method of prevention, the City need not exercise the best method of care. Nevertheless, three tests were performed on the line soon after construction and any shortcomings in initial testing have essentially been rendered inconsequential at this point because the sewer line worked for many years without incident.

 Thus, summary judgment in favor of the City on the Kas' negligence claims was appropriate. While we acknowledge that issues of constructive notice are typically left to the jury, see Tucher, 564 N.E.2d at 564 ("the question of whether the government entity had constructive notice of the alleged defect is a question properly for the jury"), we have nevertheless removed cases from the jury's consideration when the plaintiff fails to produce some evidence of constructive notice. See Czaja, 604 N.E.2d at 11 (affirming summary judgment in favor of the municipality when the plaintiff did not demonstrate a genuine issue of material fact as to defendant municipality's constructive notice). Furthermore, having determined that the City was not negligent, it follows that summary judgment was appropriate on the Kas' claims of negligent infliction of emotional distress[8] and tres-

---

8. Under Indiana's "impact rule," damages for negligent infliction of emotional distress may be recovered when there is (1) an impact on the plaintiff; (2) which causes physical injury to the plaintiff; (3) which physical injury, in turn, causes the emotional distress. *Shuamber v. Henderson*, 579 N.E.2d 452, 454 (Ind. 1991). Our supreme court later adopted a "modified impact rule" that required impact but not necessarily physical injury "[w]hen ... a plaintiff sustains a direct impact by the *negligence* of another and, by virtue of that direct involvement sustains an emotional trauma which is serious in nature and of a kind and extent normally expected to occur in a reasonable person." *Smith v. Toney*, 862

N.E.2d 656, 659 (Ind.2007) (quoting *Shuamber*, 579 N.E.2d at 456) (emphasis added). Negligent infliction of emotional distress is also actionable by a bystander based on "direct involvement" with the accident "by proving that a plaintiff actually witnessed or came on the scene soon after the death or severe injury of a loved one with a relationship to the plaintiff analogous to a spouse, parent, child, grandparent, grandchild, or sibling caused by the defendant's *negligent* or otherwise tortuous [sic] conduct." *Id.* (quoting *Groves v. Taylor*, 729 N.E.2d 569, 573 (Ind.2000)) (emphasis added). As has already been discussed at length, the City has shown that it lacked constructive knowledge of the damaged sew-

pass[9] and we therefore affirm the trial court in those regards.

### Nuisance

 The Kas also assert that the trial court erred in granting summary judgment on their nuisance claim. The Indiana Code defines nuisance as "[w]hatever is (1) injurious to health; (2) indecent; (3) offensive to the senses; or (4) an obstruction to the free use of property; so as essentially to interference with the comfortable enjoyment of life or property." I.C. § 32–30–6–6. Our supreme court has defined nuisance as "an activity that generates injury or inconvenience to others that is both sufficiently grave and sufficiently foreseeable that it renders it unreasonable to proceed at least without compensation to those that are harmed." *City of Gary ex rel. King v. Smith & Wesson Corp.*, 801 N.E.2d 1222, 1231 (Ind.2003). When determining whether something is a nuisance, "the question is whether it is reasonable to believe that the situation would naturally produce physical discomfort 'to persons of ordinary sensibilities, tastes, and habits.'" *KB Home Indiana,*

*Inc. v. Rockville TBD Corp.*, 928 N.E.2d 297, 306 (Ind.Ct.App.2010) (quoting *Gray v. Westinghouse Elec. Corp.*, 624 N.E.2d 49, 54 (Ind.Ct.App.1993)). This is a determination made by the trier of fact in light of all the surrounding facts and circumstances and, consequently, summary judgment is rarely appropriate in nuisance in fact cases.[10] *Dyer v. Hall,* 928 N.E.2d 273, 279 (Ind.Ct.App.2010), *trans. denied.*

 However, summary judgment is proper here because the Kas' claim does not sound in nuisance. The Kas have not sued to halt the City's operation of a sewer system on Fall Creek Drive; instead, they have sued for damages resulting from a single isolated event of alleged negligence. "A nuisance claim generally contemplates an action that is designed to cease or lessen the defendant's continued offensive behavior." *KB Home Indiana,* 928 N.E.2d at 307. Pursuant to the Indiana Code, "[a]n action to *abate or enjoin* a nuisance may be brought by any person whose: (1) property is injuriously affected; or (2) personal enjoyment is lessened." I.C. § 32–30–6–7 (emphasis added). "If a

---

er. Without constructive knowledge, the City cannot be held negligent. It follows, then, that the City cannot be held liable for the negligent infliction of emotional distress. Thus, summary judgment was appropriate on this claim.

9. In order to prevail on a claim of trespass, "[i]t is necessary for the plaintiff to prove only that he was in possession of the land and that the defendant entered thereon without right[.]" *Garner v. Kovalak,* 817 N.E.2d 311, 314 (Ind.Ct.App.2004) (quoting *Hawke v. Maus,* 141 Ind.App. 126, 131, 226 N.E.2d 713, 717 (1967)). "Although it is not necessary that the trespasser intend to commit a trespass or even that he know that his act will constitute a trespass, it is required for trespass that there be an intentional act and an intent to do the very act which results in the trespass." *Id.* (quoting *Hawke v. Maus,* 141 Ind.App. 126, 131, 226 N.E.2d 713, 717 (1967)), *but see Lever Bros. Co. v. Langdoc,*

655 N.E.2d 577, 582 (Ind.Ct.App.1995) (affirming a trial court judgment on the claim of "negligent trespass"). Whether couched as an intentional or negligent act, the Kas' claim for trespass nevertheless fails because it was not negligent and "one who is merely inattentive or inadvertent is not willful." *Lindley v. Oppegaard,* 150 Ind.App. 209, 212, 275 N.E.2d 825, 827 (1971).

10. A nuisance may be a nuisance per se (at law) meaning that which is a nuisance in itself, and cannot be so conducted or maintained as to be lawfully carried on or permitted to exist. *Id.* A nuisance per accidens (in fact) arises when something otherwise lawful becomes a nuisance by virtue of the surrounding circumstances. *Id.* Because running a sewer system is not an otherwise unlawful activity, the alleged nuisance complained of here would be a nuisance in fact if sewage backup was ongoing.

proper case is made, the nuisance may be *enjoined or abated* and damages recovered for the nuisance." I.C. § 32–30–6–8 (emphasis added). In other words, as we held in *KB Home Indiana*, the Kas have "failed to show that a nuisance existed or was ongoing that could be abated or enjoined ... and [plaintiff's] cause of action against [defendant] sounds in negligence." 928 N.E.2d at 307. Because the Kas' have asserted a nuisance claim premised upon a single isolated event, the trial court did not err in granting summary judgment in favor of the City.[11]

### Conclusion

The City established the lack of a genuine issue of material fact as to its actual or constructive notice of the damaged part of the sewer line, and the Kas did not sufficiently rebut this showing. Consequently, we affirm the trial court's grant of summary judgment in favor of the City on its negligence, negligent infliction of emotional distress, and trespass claims. As to nuisance, because the Kas have premised a nuisance claim on an isolated instance and not the City's continuing use of the property on Fall Creek Drive to operate a sewer, summary judgment in favor of the City was proper on that claim as well.

Affirmed.

FRIEDLANDER, J., and BROWN, J., concur.

---

11. Our conclusion in this regard is supported by case law from several other jurisdictions. *See e.g., Goode v. City of Atlanta,* 274 Ga.App. 233, 236, 617 S.E.2d 210, 213 (2005) ("an isolated act of negligence cannot form the basis of a nuisance claim"); *Breeding ex rel. Breeding v. Hensley,* 258 Va. 207, 213, 519 S.E.2d 369, 372 (1999) (stating that in order to recover for nuisance, "[m]ore than sporadic or isolated conditions must be shown"); *H. Wayne Palmer & Associates v. Heldor Industries. Inc.,* 839 F.Supp. 770, 777 (D.Kan.1993)

*ORDER*

Appellee, City of Indianapolis, by counsel, filed an Appellee's Motion to Publish Memorandum Decision.

Having reviewed the matter, the Court FINDS AND ORDERS AS FOLLOWS:

1. The Appellee's Motion to Publish Memorandum Decision is GRANTED and this Court's opinion heretofore handed down in this cause on August 17, 2011, marked Memorandum Decision, Not for Publication is now ORDERED PUBLISHED.

FRIEDLANDER, BAILEY, BROWN, JJ., concur.

("Kansas law is clear that one of the prerequisites of a nuisance is that it has been in existence for some period of time rather than being an isolated occurrence of a temporary nature."); *Ford v. Grand Union Co.,* 240 A.D. 294, 296, 270 N.Y.S. 162, 165 (1934) ("While it is not always necessary that the act complained of should be habitual or periodical, a nuisance, as a general rule, involves the idea of continuity or recurrence. Doubtless some degree of permanence is an essential element of the conception of nuisance.").