No. 9051.

THE CITY OF INDIANAPOLIS v. SCOTT.

NEGLIGENCE.—*Action for Damages.*—*Allegation of Locus in Quo.*—In an action to recover damages for personal injuries received by the negligence of a city, the complaint alleged that the plaintiff "had to pass

The City of Indianapolis *v.* Scott.

the corner of M. and L. streets, at a point where they intersect, in the city of Indianapolis, Marion county, Indiana," and that the injury occurred "at the bridge over the gutter between the said L. street and the sidewalk on said southeast corner of said streets."

*Held,* that this was sufficient to show that the injury occurred within the limits of said city.

SAME.—*Defect in Street-Crossing.*—*Notice of.*—Notice of a defective street-crossing may be inferred where it is of such a character, and has continued for such a length of time, as that the officers of the city charged with the supervision thereof, might, and probably would, have discovered it, if they had used ordinary care in the discharge of their duties.

SAME.—*Gutter-Crossings.*—It is the duty of a city not only to make her gutter-crossings safe in the first instance, but to use ordinary care to see that they are kept safe.

SAME.—A city is chargeable with knowledge of the natural tendency of timber to decay, and it is its duty to use ordinary care to detect and guard against the same.

SAME.—Where there is such a defect in a gutter-crossing of a city as to be dangerous to persons passing at night, it is the duty of such city to guard the same in some way, and the absence of gas-light from street-lamps, or other lights, in such vicinity, may be considered in determining the question of negligence.

SAME.—*Instructions.*—As to what constitutes negligence, see instructions set out in opinion.

SAME.—*Damages.*—As to the elements constituting the damages to be considered in such case, see instruction in opinion, p. 201.

PRESUMPTION.—*Instruction.*—It will be presumed by the Supreme Court, the contrary not appearing in the record, that the court below gave a proper charge on the subject of the burden of proof.

EVIDENCE.—It is not error to admit evidence on such trial of the condition of such gutter and crossing more than a year after such accident, upon the statement of counsel that he proposed afterward to show that there had been no material change in the condition thereof from the time of such accident until such examination was made.

SAME.—*Witness.*—*Expert.*—The opinion of an expert as to whether one of the sleepers in such gutter bridge, he having examined it, had rotted recently, or whether the decay was of some length of time, was admissible in evidence on such trial.

SAME.—*Privileged Communications.*—*Attorney and Client.*—*Agency of Husband for Wife.*—On such trial the defendant offered to prove by B., a member of a law firm, a conversation had by him with the husband of the plaintiff soon after such accident, in relation thereto, and as to the condition of such gutter bridge, at a time when B. was not a member of the firm, but a clerk in their office, and understood that he was being consulted as a lawyer.

*Held,* that, if the husband was acting as agent for his wife, his statements to B. were privileged, and inadmissible, in evidence.

*Held,* also, that if he were not, at the time, the agent of his wife, his statements were not competent evidence against her.

NEW TRIAL.—*Misconduct of Juror.—Verdict.*—It was alleged as a ground for a new trial, that on view of the place by the jury where such accident occurred, one of them uncovered the end of one of the sleepers, and in doing so broke off a small piece of it and crumbled it with his fingers, and that another cut the end of it with his knife.

*Held,* that such misconduct on the part of the jurors was not such as would vitiate the verdict, in the absence of anything showing that such acts had some influence in the formation thereof.

From the Marion Superior Court.

*J. A. Henry,* for appellant.

*E. C. Buskirk* and *P. W. Bartholomew,* for appellee.

WORDEN, J.—Action by the appellee against the appellant, to recover damages for personal injuries to the plaintiff, alleged to have been caused by the negligence of the city in permitting a certain gutter-crossing to become loose, broken, rotten and unsafe. Issue, trial, verdict and judgment for the plaintiff. Judgment affirmed, on appeal to general term.

Questions are raised as to the sufficiency of the complaint, and as to the correctness of the ruling in overruling a motion for a new trial.

The only objection to the complaint is, that it does not, as is claimed, show that the place where the injury occurred was within the corporate limits of the city.

The complaint alleges that the plaintiff "had to pass the corner of Michigan and Liberty streets, at a point where they intersect, in the city of Indianapolis, Marion county, Indiana," and the injury is alleged to have occurred "at the bridge over the gutter between the said Liberty street and the sidewalk on said southeast corner of said streets." This, it seems to us, sufficiently shows that the injury occurred within the limits of the city.

We come to the motion for a new trial, and will consider the points relied upon by the counsel for the appellant.

We can not reverse the judgment on the evidence, as that was sufficient, in our opinion, to justify the verdict. The defendant asked, but the court refused, the following charges :

''8th. The law does not impose on the city of Indianapolis the duty of keeping gas-lamps lighted during all hours of the night ; nor is a city liable for injuries which a person may receive while passing over or along her streets, even though such injuries may have been caused by the failure of the city to have lamps properly lighted.

"9th. It is the duty of a person in crossing the streets of the city to exercise proper care ; and if the foot-crossings provided by the city for persons on foot are in a reasonably safe condition for travel, it would be the duty of persons on foot to use such crossing in crossing the street, and the city would not be liable for an accident that might occur to a person in crossing the street at other points between the said crossings, if the street was properly constructed and in a reasonably safe condition ; nor would the city be liable, if a person in crossing the street should get off the crossing and walk or step into the gutter, and thereby receive an injury.''

The court of its own motion gave the following charges :

"8th. I have, in some of the preceding instructions spoken of an alleged defect in the street-crossing, continuing for such a length of time as that notice thereof might be reasonably inferred. Notice of such defect may be reasonably inferred, where it is of such a character, and has continued for such a length of time, as that the officers of the city, charged with the supervision of its street-crossings, might, and probably would, have discovered it, if they had used ordinary care in the discharge of their duties.

"9th. It is not enough, to exonerate the city from liability on account of rotten and insecure gutter-crossings, to show that they were originally well constructed and safe. It is the duty of the city not only to make her gutter-crossings safe

in the first instance, but to use ordinary care to see that they are. kept safe. The city is chargeable with knowledge of the natural tendency of timber to rot and decay, by lapse of time and exposure to the elements, and it is her duty to use ordinary care to detect and guard against the same; and, if injury results by reason of rotten and insecure timbers in a gutter-crossing, it is no excuse that the city officers, charged with the supervision of her streets and sidewalks, did not know that the timbers of such gutter-crossing were rotten and insecure, if, by ordinary care in the discharge of their duties, such officers might have discovered the condition thereof in time to have repaired the same before such injury.

"10th. The law does not impose upon the city of Indianapolis the duty of keeping her gas-lights lighted during all hours of the night, nor is the city liable for injuries which a person may receive while going over or along her streets, even though such injuries may have been caused by the failure of the city to have her lamps lighted, if this is the only act or omission proved against the city. But if there is a defect in a sidewalk or gutter-crossing, liable to be dangerous to travellers passing along the same in the night-time, though using ordinary care, then it is the duty of the city to guard the same in *some* way, and, if there are no lights, then barriers or some other precautions must be used. You have a right, therefore, to consider the circumstance of the absence of lights in the vicinity of the gutter-crossing in question, at the time of the alleged accident, if it is a fact that there were no lights, in connection with the other facts and circumstances proved, both as bearing upon the question whether or not the defendant was guilty of negligence, as well as in determining whether or not the plaintiff herself was free from negligence.

"11th. If you find that the gutter-crossing in question, at the time in question, and in its then condition, and with-

out lights, if there were no lights, was reasonably safe for a person crossing on foot, and in the use of ordinary care, then the plaintiff can not recover, even though she did step or fall, as she claims, into the adjacent gutter, for, as I have said before, the plaintiff must prove, not only that she received the injuries complained of, but she must prove that the city was guilty of negligence as charged, and that such negligence directly contributed to produce such injuries.

"12.   Again, if you find that the street crossing connecting the gutter-crossing in question with the west gutter-crossing on the opposite side of the street, was reasonably safe and convenient, by night as well as by day, for persons crossing the street on foot at that point, and using ordinary care, and the plaintiff, by the use of such care, might have crossed on such street-crossing, and, if she had kept on it, would have avoided the alleged defect complained of, but she did not use such care to keep on such street-crossing, and, in consequence of her diverging from the line of the street-crossing, received the injuries complained of, then she can not recover, even though the gutter-crossing in question was unsafe for persons so diverging from the line of the street-crossing.   But the plaintiff is not to be deemed guilty of a want of ordinary care in diverging from the line of the street-crossing, if, in consequence of the darkness, she could not see it, and had no reason to apprehend that it was unsafe to cross where she attempted to cross.

"14.   If you find for the plaintiff, you will, in estimating her damages, if any, take into consideration the nature of her injuries, how long she has been disabled in consequence thereof, if she has been so disabled, and, if she is not now cured, whether it is probable that a permanent cure can be effected, and, if so, how long it will be before such a cure can be effected, her physical and mental sufferings, if any, consequent upon such injuries, and award her such a sum as, in your judgment, will fully compensate her for the injuries

which you find are the natural and direct result of the negligence complained of.''

The matter of the charges refused was sufficiently embraced in others given; and those given seem to us to have contained a correct exposition of the law. The city was clearly ''chargeable with knowledge of the natural tendency of timber to rot and decay by lapse of time and exposure to the weather.'' *Rapho* v. *Moore,* 68 Pa. St. 404.

In the tenth charge, the law was correctly expounded as to gas-lights. In that charge the jury were distinctly told that the city was not liable for any accident that might have been caused by a failure to keep the lamps lighted, if this was its only omission. But, if there was such a defect in the gutter-crossing as is mentioned in the charge, it was the duty of the city to guard the public against it, in some way; and we are clear that the jury might well consider, amongst other things, the absence of gas or any other kind of lights, in the vicinity of the crossing, in determining the questions of negligence.

The fourteenth charge is objected to. The counsel for the appellant, in his brief, says: ''The court directs the attention of the jury to certain elements of damages, but they are *nowhere* told or cautioned, that these elements of damages must be determined by the evidence adduced upon the trial. And the charge concludes, by expressly authorizing the jury to assess compensatory damages for what '*you* (the jury) *may find* are the natural and direct results of the alleged negligence complained of.

''The jury should have been instructed that their finding or belief must be founded upon the evidence; and, if the court fails to do so, it is error sufficient to authorize a reversal.''

The objection made to the charge is without substantial foundation. The charges of the court do not all appear to be in the record, and it may be presumed that the court

The City of Indianapolis *v.* Scott.

gave a proper charge on the subject of the burden of proof, the contrary not appearing. But however this may be, the charge in question, standing alone, is not erroneous. The court enumerated certain matters that formed the elements of damages. But no jury of reasonable intelligence could have been misled by the charge into the supposition that such matters could be considered unless shown by the evidence. As to the latter part of the charge, the jury could not suppose they were authorized to *find* anything except from the evidence. If the nature and character of the plaintiff's injuries were shown, the amount of her damages must have been determined by the judgment of the jury.

We come to some questions upon evidence.

The plaintiff introduced as a witness H. C. Perkins, and proved by him the condition of the gutter and crossing more than a year after the accident happened, when the witness made the examination. This was done on the statement of counsel for the plaintiff, that he proposed to show afterward that there had been no material change in the condition of the gutter and crossing from the time of the accident until the witness made his measurements. In the admission of this evidence there was no error.

The witness, Perkins, was shown to have followed the business of civil engineering a great deal of the time for twenty-five years, and to have had experience in judging of the soundness of timbers in bridges and such structures, and had handled woods since he was a boy. He was allowed to give an opinion whether one of the sleepers in the structure, he having examined it, had rotted recently, or whether the decay was of some length of time. In this there was no error. 1 Greenl. Ev., 13th ed., p. 494, sec. 440, note 2.

The defendant, at the proper time, introduced as a witness John S. Berryhill, a lawyer of the firm of Hanna, Knefler & Berryhill. The witness, at the time of the accident, was not a member of the firm, but a clerk in the office. Soon

after the accident, the husband of the plaintiff met the witness, and they went to look at the place where the accident happened, and some conversation occurred between them. The witness said, on the examination, that he understood he went to the place as an attorney; that the plaintiff's husband hailed him as he was passing, "and wanted to employ us" (Hanna & Knefler, perhaps) "in the matter," and the conversation was had by the witness as a lawyer.

The defendant offered to prove by the witness, that, in the conversation above alluded to, Mr. Scott, the plaintiff's husband, told him that there was no broken board there; that the first time the witness ever heard that there had been any claim that there was a broken board on the north side of that crossing was during the last trial of this cause, from any intimations either from Mrs. Scott or her husband; and that, in the conversation alluded to, Mr. Scott told the witness that his wife had stepped off the bridge owing to the fact that the gas-lamp was not lighted.

This evidence, on the objection of the plaintiff, was properly excluded. It was not material when the witness first heard of a claim that there was a broken board on the north side of the crossing; and the communication of Scott to him was clearly privileged, if Scott was acting as the agent of his wife in laying the matter before the witness as a lawyer or as an agent of the firm for whom he was a clerk or agent. 1 Greenl. Ev., sec. 239. If Scott was not the agent of his wife, his statements were not competent evidence against her.

One of the grounds for a new trial was the alleged misconduct of the jury, on view of the place where the accident occurred. It appeared by affidavits that, on the view, one of the jurors, with a stick or cane, removed the earth or covering from the north end of the west sleeper of the crossing, the other jurors looking on, *apparently* examining the sleeper as to its then being rotten; and that another

juror with his knife cut the end of the sleeper, *apparently* to determine whether it was then decayed or rotten; and that the juror first named picked off small pieces of the decayed portion of the sleeper, and *apparently* crumbled it in his fingers, in the presence of the other jurors; and, from the manner of the jury at the time, they seemed to the affiants to be examining the sleeper, for the purpose of ascertaining its condition as to rottenness.

The plaintiff produced the affidavit of the bailiff who had charge of the jury, who affirmed that one of the jurors, when he examined the west sleeper of the foot-bridge found the north end of it covered with dirt and soil, took his knife and cane and removed a portion thereof, and in doing so broke a small piece of the rotten timber from the sleeper, and did nothing more or in addition; that the affiant was within a few feet of the juror, who was facing him, and he heard no comments from the juror.

Perhaps, strictly speaking, the jury had no right to do anything more than to view the premises, thereby to enable them the better to apply the evidence given upon the trial. *Heady* v. *The Vevay, etc., Turnpike Co.*, 52 Ind. 117. But it seems to us that the facts, that one of the jurors uncovered the end of one of the sleepers, and in doing so broke off a small piece of it and crumbled it with his fingers, and that another juror cut the end of it with his knife, if such were the facts, do not amount to such misconduct on the part of the jurors as should be held to vitiate the verdict, in the absence of anything showing that they had any influence in the formation of the verdict. *Whelchell* v. *The State*, 23. Ind. 89.

There is no available error in the record.

The judgment below is affirmed, with costs.