Alvin MILLER and Lydia Miller,
Appellants (Plaintiffs Below),

v.

INDIANA STATE HIGHWAY DEPARTMENT, Board of Commissioners of Marshall County, Indiana, Appellees (Defendants Below).

Robert BREEDEN, Joyce Breeden, and Garnetta Light, Appellants (Plaintiffs Below),

v.

INDIANA STATE HIGHWAY DEPARTMENT and Board of Commissioners of Marshall County, Appellees (Defendants Below).

No. 43A04–8602–CV–43.

Court of Appeals of Indiana, Fourth District.

May 21, 1987.

R. Kent Rowe, Jerry E. Huelat, Gerald A. Kamm, Doran, Manion, Boynton, Kamm & Esmont, South Bend, Donald J. Parker, Chicago, Ill., for appellants.

Linley E. Pearson, Atty. Gen., Robert F. Hassett, Deputy Atty. Gen., Indianapolis, Edward N. Kalamaros, Thomas F. Cohen, South Bend, for appellees.

YOUNG, Judge.

On July 2, 1982, Alvin and Lydia Miller toured a house located in Bourbon, Indiana. Mr. Miller's brother led the way to the house since the Miller's had never been there before. After the visit, the Millers left without the aid of Mr. Miller's brother and without being familiar with the roads upon which they were traveling.

While driving on East 7th Road, Mr. Miller saw a "slit of red," realized he was approaching an intersection and applied his brakes. He was unable to stop his car before entering the intersection of East 7th Road and State Road 331. The Millers' car collided with a car driven by Janet Breeden.[1] The "slit of red" seen by Mr. Miller was later shown to be a stop sign that was obstructed by a mulberry bush.

Both the Millers and Breedens filed suit against Marshall County and the State Highway Department. The county was dismissed from the suit pursuant to a motion for summary judgment prior to trial. The action against the state proceeded to trial and the jury returned a verdict in favor of the state against all plaintiffs. This appeal followed.

The Millers assert that:

1. The trial court erred in granting the county's motion for summary judgment;

---

1. Travis Breeden and Garnetta Light, passengers in the car driven by Mrs. Breeden, also became involved in the ensuing legal action as did Mrs. Breeden's husband, Robert. As these parties' claims do not affect the resolution of the issues raised on appeal, we refer to the parties simply as the Millers and the Breedens.

2. The jury's verdict was contrary to law; and

3. The trial court erred in refusing Miller's tendered instructions numbers 2, 3, 4, 7, 8, 11, 12 and 13.

The Breedens appeal solely on the basis that the jury's verdict was contrary to law. We affirm.

The Millers first assert that the trial court erred in granting the county's motion for summary judgment.[2] The trial court found that any duty to erect and maintain the stop sign at the intersection of East 7th Road and State Road 331 belonged to the state, not the county. We agree.

■ The duty to maintain and erect stop signs at intersections of county and state roads clearly has been delegated to the state. By statute, the department of highways is responsible for the "construction, reconstruction, improvement, maintenance, and repair of state highways...." IND. CODE 8-9.5-4-6. While counties are instructed to erect stop signs at certain designated intersections, IND.CODE 8-17-9-2, they are specifically denied the right to do so at intersections involving state or federal highways. IND.CODE 8-17-9-1 and IND.CODE 9-4-3.1-4.[3] The duty to erect traffic control devices upon state highways

has specifically been placed upon the state highway commission through IND.CODE 9-4-1-31(a) which states:

The department of highways shall place and, except as otherwise provided in this section, maintain such traffic control devices conforming to its manual and specifications upon all state highways, including the state maintained routes thereof through any incorporated city or town, as it shall deem necessary to indicate and to carry out the provisions of this act, or to regulate, warn or guide traffic.

■ These statutes clearly express an intent to place the duty of erecting and maintaining stop signs along state highways on the state, not the local authorities. The stop sign in question was erected by the state and was located on the state's right of way. It was placed to control traffic flow onto a state highway, and there was no evidence indicating that the state had granted the county permission to maintain or exercise control over the traffic control devices at that intersection. Under these circumstances, the county simply had no duty to maintain the stop sign in question.[4]

■ The Millers and Breedens assert that the jury's verdict was contrary to law

---

**2.** The county filed two separate motions for summary judgment. The first was filed on August 10, 1984 and was denied. Following the Indiana Supreme Court's decision in *Hurst v. Board of Com'rs of Pulaski County* (1985), Ind., 476 N.E.2d 832, the county renewed its motion for summary judgment relying on both the decision in *Hurst* and statutory law for the proposition that the county had no duty to maintain the stop sign in question. The trial court granted the renewed motion on the basis of its interpretation of the statutory law.

**3.** These statutes provide:

8-17-9-1 *Establishment and designation*

Sec. 1. Boards of commissioners of the counties of the state shall establish and designate as preferential highways those public highways in their counties which, as the most frequently traveled, constitute thoroughfares to and from cities and towns: Provided, that *the provisions of this section shall not apply to county highways whereby they intersect state or federal highways.*

8-17-9-2 *Marking*

Sec. 2. All highways and roads intersecting such preferential highways shall be clearly

marked, at every intersection, with stop signs to warn all vehicles using such intersecting highways and roads to stop before crossing or entering any such preferential highways.

(Emphasis added.) IND.CODE 9-4-3.1-4 provides:

*All public and private agencies are hereby prohibited from erecting any traffic control devices on any state maintained highway without the written permission of the department of highways.* However, the state department of highways with respect to signals on state highways in cities and towns shall install any signal that meets the standards, specifications, and warrants as set forth in the Indiana manual. The state shall grant written permission to any city or town to erect such signal if it is not possible for the state immediately to do so. *The department of highways shall maintain responsible control of all traffic signals on the state highway system.*

(Emphasis added.)

**4.** It follows that the county cannot have a common law duty to maintain a traffic control device over which it is statutorily prohibited from exercising control.

because the evidence clearly indicated that the sole proximate cause of the collision was the state's failure to properly maintain the stop sign in question. Parties asserting that a judgment is contrary to law must establish that the evidence is without conflict and leads to but one conclusion and the trier of fact reached the opposite conclusion. *Indiana-Kentucky Elec. Corp. v. Green* (1985), Ind.App., 476 N.E.2d 141, 143. We "will neither weigh the evidence nor judge the credibility of the witnesses and we will only consider the evidence favorable to the prevailing party together with all reasonable inferences flowing therefrom." *Id.* If there is evidence to support the judgment, we will not find the judgment to be contrary to law. *Young v. Van Zandt* (1983), Ind.App., 449 N.E.2d 300, 306.

■ Indiana courts have recognized that the state and counties have a general common law duty to exercise reasonable care in the design, construction, maintenance and repair of highways and roads within their control. *See e.g. Peavler v. Board of Com'rs* (1986), Ind.App., 492 N.E.2d 1086. Once a traffic control or regulatory sign is placed at a location, a duty to reasonably maintain the sign arises. *Id.* at 1089. The maintenance of a stop sign includes assuring that the sign is visible to motorists. *See Board of Com'rs v. Briggs* (1975), 167 Ind.App. 96, 337 N.E.2d 852 (judgment in favor of plaintiff was affirmed partly on the basis that a sign formerly erected at a Y-road intersection was not properly maintained; *i.e.*, it was not visible to motorists because it had apparently fallen down and was not repaired or replaced). *See also* Indiana Manual on Uniform Traffic Control Devices for Streets and Highways, Indiana Dept. of Highways (1981). In the present case, the parties vigorously debate whether the state's duty to maintain a stop sign may require it to check areas beyond its right of way. We find that it does.

■ The issue with respect to traffic signals is who controls the device, not who controls the property on which the obstruction exists. In order to assure visibility of a traffic control device, the state may be required to view the sign from a position outside of its right of way. If an obstruction is present outside of the state's right of way, the state has a duty to take appropriate action to assure its removal. The action taken may be nothing more than notifying the appropriate property owner to have the offending obstruction removed. To hold otherwise would obtain the ridiculous result of neither the state or county having a duty to assure the visibility of the traffic control device. The county would have no duty because the sign is not its sign and statutes specifically prohibit the county from interfering with state highways unless special permission is received. The state would have no duty because although the sign was its own, the property on which the offending brush was located was not within its control. Such a result would be untenable. We therefore find that the duty to maintain a traffic control device may require the state to go beyond its own right of way to assure the sign is visible to motorists. Finding this duty to exist, however, does not necessarily dictate a reversal of the jury's verdict since the jury may have concluded that the actions taken by the state were sufficient to fulfill this duty.

■ In this case, the state clearly controlled the stop sign at issue and was responsible for taking appropriate action to assure its visibility. Although the state is instructed by statute to install and maintain traffic control devices, it is not instructed as to how the signs are to be maintained. While the Indiana Manual on Uniform Traffic Control Devices for Streets and Highways must be adhered to by the state, it does not create a statutory duty. *See Indiana State Highway Com'n v. Daily Exp., Inc.* (1987), Ind.App., 503 N.E.2d 1237, 1239–40. The specific manual provision at issue in this case states:

It is *desirable* to keep traffic signs in proper position, clean and legible.... Special attention and necessary action *should* be taken to see that weeds, trees, shrubbery and construction materials do not obscure the face of any sign.

(Emphasis added.) This section does not impose specific requirements or absolute standards but only recommends that certain action be taken. Thus, any duty to remove the bush in question would arise under the state's common law duty, not as a specific statutory duty. *See Daily Exp., Inc., supra.*

■ As previously noted, the state's general duty is "to exercise reasonable care in the design, construction and maintenance of its highways for the safety of public users." *State v. Bouras* (1981), Ind. App., 423 N.E.2d 741, 744. The standard of care is that which would be exercised by an ordinary prudent person under the circumstances. *Id.* This general duty of care arises when the state has either actual or constructive knowledge of an unsafe condition. *Id.* at 744–45. The state will be charged with constructive knowledge when

> ... The condition is of such a nature the state authorities or its agents could in the exercise of reasonable diligence, have discovered and corrected it.... Where there is actual or constructive knowledge of an unsafe condition, there is a breach of the duty of care if the state does not act. On the other hand, where there is neither actual nor constructive knowledge of a dangerous condition, so that even the reasonably prudent person would not have been alerted to action, then there is no negligence.

*Id.* (Citations omitted.)

In the present case, the jury was instructed that the state highway department had specific duties including:

> 1) to keep itself informed of the existence of conditions upon or about the highway under its control which might endanger traffic upon the highway, making in that connection such inquiry as may be reasonable in the circumstances;
>
> 2) to correct or repair defective conditions which have existed for a sufficient length of time as to allow the highway department to discover the defect and within that time which may be regarded as reasonable in view of the priority of the work over other work and as dictated by the dimension of the existing hazard

and within the constraints of budgetary and resource allocation;

(R. 636 Court's Final Instruction No. 9.) This instruction was given without objection. The jury heard evidence that there are approximately 26,000 intersections of state highways with non-state roads in Indiana. Approximately 12,500 of these are intersections between state highways and county roads. Typically, the state's routine maintenance programs focused on mowing and trimming within the state's right-of-way. Thus, state employees operating the mowers did not check for foliage or other conditions outside of the right-of-way. However, if the department received a complaint of a problem outside of the state right-of-way, the state would identify the problem and contact the proper authorities to have the problem corrected. Kenneth Mellinger, the head of the state's maintenance operations, noted that it would take a tremendous amount of time to return to each intersection in the state highway system to check for potential problems. Mellinger testified that he had not received notice of any complaint concerning the visibility of the stop sign in question.

■ Given this evidence and Final Instruction No. 9, the jury could have properly concluded that it was unreasonable to expect the state to affirmatively investigate each intersection to check the visibility of stop signs. The jury may have decided that the state's method of waiting until a complaint was received constituted reasonable diligence when the number of intersections involved and the other duties of the highway department were considered. Under these circumstances, we cannot say that the evidence was without conflict and led to but one conclusion and the jury reached the opposite conclusion. Rather, the evidence would support a finding that the state's actions were reasonable under the circumstances and the state had no notice of the problem prior to the accident.

■ The Millers next. assert that the trial court erred when it refused Millers' tendered instructions 2, 3, 4, 7, 8, 11, 12 and 13. When reviewing a trial court's

refusal of tendered instructions, we must determine whether the tendered instruction correctly states the law, whether there is evidence in the record to support the giving of the instruction and whether the substance of the instruction was covered by other instructions which were given. *Campbell v. City of Mishawaka* (1981), Ind.App., 422 N.E.2d 334. The instructions refused by the trial court in the present case fail to meet this criteria and were properly refused.

Tendered instructions 2 and 4 would have informed the jury that a driver has a right to assume, until noticed to the contrary, that the Highway Department complied with the Indiana traffic manual in placing and maintaining its stop signs and that the signs will be posted in a reasonable manner so that they are visible. The substance of these instructions was covered by the court's instructions numbers 13 and 14. Millers' tendered instruction number 3 states that reasonable care is to be determined in light of the circumstances as they existed at the time of collision. The substance of this instruction, however, was covered in the court's instructions 7, 8, 10 and 11. Similarly, the substance of Millers' tendered instruction number 7, which in essence provides that the state was required to follow the traffic manual, was covered by the court's instruction number 13. The court's instruction did not reiterate the applicable sections of the manual, as did the Millers' instruction number 7, but it properly informed the jury of the state's duty to follow the manual and told the jury it could consider the evidence of the manual along with the other evidence presented when determining whether the state acted negligently. Thus, there was no error in the refusal of Millers' instruction number 7.

Contrary to the Millers' assertions, Millers' tendered instruction number 8 was also covered by the court's instructions. The Millers assert that the instruction would have informed the jury that the state was required by statute to maintain its traffic control devices whether or not the maintenance required the state to go out of its right-of-way. Millers' tendered instruction number 8, however, does not specifically state that proposition. Instead it essentially reiterates IC 9–4–1–31 which outlines the state's duty. The court's final instruction number 9 clearly outlines the state's duty to maintain its highways. Thus, the substance of Millers' instruction number 8 was covered by the court and was reduced to language that was more readily understandable. The trial court committed no error in the refusal of Millers' instruction numbers 2, 3, 4, 7 and 8.

■■■ The Millers also assert error in the refusal of instruction numbers 11, 12 and 13. These instructions, however, were in excess of the ten permitted under Indiana Rules of Procedure, Trial Rule 51(D). The Millers do not assert that they sought or the trial court granted them permission to submit more than ten instructions. Thus, no error may be predicated on the trial court's refusal of these instructions.

The judgments in favor of the state and county are affirmed.

CONOVER, P.J., concurs in result.

ROBERTSON, J., concurs.