Jeffrey Todd SPIER, a minor, BY his father and natural guardian Christopher T. SPIER and Christopher T. Spier in his own behalf, Appellant–Plaintiffs,

v.

The CITY OF PLYMOUTH, Indiana, Joseph Hartwell and Melanie L. White, Appellee–Defendants.

No. 25A05–9111–CV–358.

Court of Appeals of Indiana, Fifth District.

June 17, 1992.

Rehearing Denied Aug. 3, 1992.

Ralph R. Huff, Jones, Huff & Palmer, Plymouth, for appellant-plaintiffs.

Robert T. Keen, Jr., Larry L. Barnard, Miller, Carson & Boxberger, Fort Wayne, for appellee-defendants.

SHARPNACK, Judge.

Christopher Spier, in his capacity as parent and natural guardian of Jeffrey Spier and in his individual capacity, appeals the summary judgment entered by Fulton Circuit Court in favor of the defendant City of Plymouth. We reverse.

In this appeal the Spiers raise three issues, which we restate below:

1. Do the undisputed facts establish that the city had no constructive knowledge before the accident that the sign had rusted through and was thus in a condition likely to cause injury?

2. Did the trial court improperly consider an affidavit which the city tendered in support of its motion for summary judgment?

3. May the city establish that it is immune from liability upon a showing that an act of a third person was a proximate cause of Jeffrey's injury without regard to whether an act of the city was also a proximate cause of the injury?

The following are the facts presented in the light most favorable to the Spiers, who were the nonmoving parties. On June 20, 1989, Jeffrey Spier, a five year old child, was at the home of his baby sitter, Melanie White. In the early afternoon, Jeffrey and another child, Jessica Leech, were playing on a sidewalk near White's house. Jessica swung herself around the signpost, and it fell over. The children attempted to replace the sign. When they did so, it fell again and severely injured Jeffrey's hand.

The signpost was made of either steel or iron. The signpost had rusted through around almost its entire circumference near its base, the point at which the post broke through. The extent of the rust suggested that the rust had been building up for a long time.

One of White's neighbors, Joseph Hartwell, had landscaped and mulched the right-of-way on which the signpost was located. The rusted area of the signpost was immediately above the level of the mulch.

The city was aware that steel and iron signposts are likely to rust near ground level. In his affidavit, one of the Spiers' witnesses, a former superintendent of the Plymouth Street Department, stated that several of these signposts had rusted through and fallen over during his tenure with the department. The city was aware of the problem and instituted a program of inspection and maintenance in order to prevent rust. As part of this program, a rotation system was set up under which a portion of the signposts in the city were inspected and repainted every summer. This resulted in every signpost being inspected and repainted every two to three years. Signposts that were rusted through or otherwise damaged were replaced as part of the program. The city abandoned the maintenance program in 1988.

One of the residents of the neighborhood, Theodore Klingerman, gave a statement to a claims adjuster who was investigating the accident on behalf of the city's insurance carrier. Klingerman stated that he saw a boy shake and bend the signpost on the day before the accident. Klingerman died before the city filed its motion for summary judgment. The statement given to the adjuster was presented as a affidavit in support of the city's motion for summary judgment. Spiers do not challenge the adequacy of the statement to qualify as an affidavit.

When we review a trial court's entry of summary judgment, we are bound by the same standard as the trial court: we must consider all of the pleadings, affidavits, depositions, admissions, answers to interrogatories, and, where applicable, testimony in the light most favorable to the nonmoving party in order to determine whether a genuine issue of material fact remains for resolution by the trier of fact. *Ayres v. Indian Heights Volunteer Fire Department* (1986), Ind., 493 N.E.2d 1229, 1234. A genuine issue of material fact exists where facts concerning an issue that would dispose of the litigation are in dispute or where the undisputed facts are capable of supporting conflicting inferences on such an issue. If we have any doubts concerning the existence of a genuine issue of material fact, we must resolve those doubts in favor of the nonmoving party, and we must reverse the entry of summary judgment. *Woodward Insurance, Inc. v. White* (1982), Ind., 437 N.E.2d 59, 62. However, if no genuine issue of material fact exists, and if the moving party is entitled to judgment as a matter of law, we must affirm the entry of summary judgment. *Id.* The moving party bears the burden of showing the absence of a factual issue and that he is entitled to judgment as a matter of law. *Norman v. Turkey Run Community School Corp.* (1980), 274 Ind. 310, 312, 411 N.E.2d 614, 615.

The Spiers argue that a genuine dispute of material fact exists on the issue of

whether the city had actual or constructive notice of the dangerous condition of the signpost. In order to establish that the city had no notice of the dangerous condition of the signpost, the city offered the affidavit of Louis Hite, Plymouth's current street superintendent. Hite stated that, "The City of Plymouth Street Department has never experienced a problem with a pole of a street sign rusting to such a degree as to cause it to fall." (Record, p. 48). The city also states that neither White nor Hartwell had noticed rust on the sign before the accident.

In response to the city's factual assertions, the Spiers offered the affidavits of Roger Smiley and Glen Sarber. Smiley, a Plymouth police officer, stated that he had examined the post immediately after the accident and taken pictures which showed "the signpost where it had broken off and [which showed] that said signpost was rusted through at that point around most of its circumference and that the metal broke off at at the points on said circumference where the sign was not yet completely rusted through." (Record, p. 54). He further noted that the pictures showed that mulch had been placed around the signpost and that the signpost had rusted immediately above the level of the mulch. (Record, p. 54). As noted earlier, Sarber stated that a number of Plymouth's signposts had rusted through and fallen over during the years while he was employed in the street department; that, because of the rusting problem, the department instituted an inspection and maintenance program during his tenure with the department; that, in his experience, such a program is

necessary to maintain the posts in good condition; and that the department discontinued the program after he left the department. (Record, pp. 60–63).

■■ The Spiers concede that there is no evidence that the city had actual notice that the sign was severely rusted, and we accept that the city did not have actual knowledge of the dangerous condition. However, the Spiers did present sufficient evidence to create a factual dispute as to whether the city had constructive knowledge of the condition of the signpost. The state and its political subdivisions have a duty to maintain and repair the roads within their control. *Miller v. State Highway Department* (1987), Ind.App., 507 N.E.2d 1009, 1012. Included in this duty is the duty to maintain and repair traffic control signs. *Id.* This duty does not attach, however, unless the city has actual or constructive knowledge of a dangerous situation. *Tucher v. Brothers Auto Salvage Yard* (1991), Ind.App., 564 N.E.2d 560, 564; *Miller*, 507 N.E.2d at 1013. The question of whether the municipality has constructive knowledge of the condition is normally one to be decided by the finder of fact. *Tucher*, 564 N.E.2d at 564.

The Spiers tendered affidavits which raised the inference that the signpost must have been rusting for a long time in order to have corroded to the point that it fell over. These affidavits created a material issue of fact on the question of whether the condition existed for a sufficient period for the city to be charged with constructive knowledge of its existence.[1] The trial

1. In two similar cases our courts have charged municipalities with constructive knowledge of hidden corrosion where inspection would have uncovered the corrosion and possibly prevented the resulting injuries. In *City of Indianapolis v. Scott* (1880), 72 Ind. 196, the supreme court affirmed a judgment against the city arising out of injuries which resulted from a rotten wooden gutter-crossing. The city had argued on appeal that the trial court had erred by instructing the jury that the city was chargeable with knowledge of the natural tendency of timber to rot and decay over of time due to exposure to the elements, that the city had a duty of ordinary care to detect decay, and that, if the city had time to discover and repair the rotten wood, it

could not defeat a claim by asserting that it had no actual notice of the defect. The supreme court held that the instruction was not in error, stating, "The city was clearly 'chargeable with knowledge of the natural tendency of timber to rot and decay by lapse of time and exposure to weather.'" *Scott*, 72 Ind. at 202. The appellate court reached a similar result in *City of Columbia v. Langohr* (1898), 20 Ind.App. 395, 50 N.E. 831. In *Langohr*, the court affirmed a judgment in favor of a plaintiff who was injured when one of the boards of a wooden sidewalk flipped up because the nails which had fastened it had rusted through. The boards had been loose for some time, and had in fact come out of position on several occasions, but had always been put

court erred in entering summary judgment and keeping the question from the trier of fact.

In response, the city asserts that any rusting problem was not visible and could not have been noticed by agents of the city. In addition, the city states that the uncontroverted facts establish that the signpost did not fall because it had rusted through but because a teenager had broken the signpost the day before the accident. The city argues that it should not be charged with constructive knowledge of any dangerous condition allegedly caused by this unknown teenager.

Because there is a conflict as to a material issue of fact on this point, the trial court should not have entered summary judgment for the city. The Smiley and Sarber affidavits raise the inferences that the city's street department knew that the type of signpost involved in the accident was susceptible to rust and that rusted signs had broken in the past. In addition, the Smiley affidavit and pictures support the inference that the signpost in question had rusted through and broken at the point of the rust through. Finally, the Sarber affidavit supports the inference that the city knew of the importance of regular inspection and maintenance of the signposts to prevent rust through accidents, but chose to abandon the inspection and maintenance program nevertheless.

■ The affidavits that the city offered in support of its motion do not establish without contradiction that the city had no constructive knowledge of the dangerous condition of the signpost. The Hite affidavit which the city offered in support of its motion does nothing more than directly contradict Sarber's assertion that the city's street department knew that this type of signpost was susceptible to rust through and breakage. Under these circumstances, an issue of fact remains as to whether the city had constructive knowledge of the condition of the signpost, and the trial court

should not have entered summary judgment in favor of the city.

The Spiers next argue that the trial court erred in considering the Klingerman statement in ruling on the motion for summary judgment. They argue that the statement is hearsay and would not be admissible into evidence at trial, and they assert that they have had no opportunity to cross-examine Klingerman. The city argues that it is not necessary that Klingerman be available to be cross-examined for the affidavit to be sufficient to support the motion for summary judgment. The city further alleges that credibility challenges normally are not sufficient to defeat a motion for summary judgment. *C & C Oil Co. v. Department of Revenue* (1991), Ind.Tax, 570 N.E.2d 1376, 1380. In addition, the city argues that credibility challenges cannot defeat a motion for summary judgment unless a reasonable trier of fact could choose to disbelieve the affiant's statement of the facts. *McCullough v. Allen* (1983), Ind. App., 449 N.E.2d 1168, 1172. The city also asserts that the affidavit does not contain inconsistencies or evasive language and is not suspect. Finally, the city argues that the person who makes an affidavit in support of a motion for summary judgment need not be subject to cross-examination. *Banco de España v. Federal Reserve Bank* (2nd Cir.1940), 114 F.2d 438; *Heine v. Raus* (D.Md.1966), 261 F.Supp. 570, *vacated*, (4th Cir.1968), 399 F.2d 785, 33 A.L.R.3d 1318.

■ We hold that the trial court erred in relying on the Klingerman affidavit. The trial rules provide, in relevant part, "Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Ind. Trial Rule 56(E). The recorded statements of a deceased party are hearsay which may not be admitted into evidence unless they fall into

back in place by passers by. The appellate court found that, because it was to be charged with constructive knowledge of the defective condition, the city's lack of actual knowledge of

the defect did not defeat the plaintiff's claim. *Langohr*, 20 Ind.App. at 399–400, 50 N.E. at 832–833.

a recognized exception to the general prohibition against the use of hearsay. *Morell v. Morell* (1901), 157 Ind. 179, 183, 60 N.E. 1092, 1094; *American United Life Insurance Co. v. Peffley* (1973), 158 Ind.App. 29, 40, 301 N.E.2d 651, 658, *rehearing denied,* 158 Ind.App. 29, 306 N.E.2d 131. This court has held that a party resisting a motion for summary judgment may not use an affidavit which consists of inadmissible hearsay to create a dispute as to an issue of material fact. *Newell v. Standard Land Corp.* (1973), 156 Ind.App. 597, 603, 297 N.E.2d 842, 846 (*citing* T.R. 56(E)). It follows that a party advancing a motion for summary judgment may not use an affidavit consisting of inadmissible hearsay to establish the absence of a material issue of fact. The trial court therefore should not have relied on the statement.

The two federal cases cited by the city are not sufficient support for this court to abandon *Newell.* In the *Banco de España* case, the Spanish ambassador filed an affidavit in support of a successful motion for summary judgment. On appeal, the plaintiffs argued that the trial court should not have relied on the affidavit because the ambassador was immune from process and therefore not subject to cross-examination. The second circuit rejected this argument because the ambassador's immunity from process was subject to waiver. In short, he could testify to the facts asserted in the affidavit at trial, and, if he did so, he would then be subject to cross-examination. If the ambassador refused to submit himself to cross-examination, he would be incompetent to testify at all. *See Banco de España,* 114 F.2d at 445.

In the *Heine* case, the plaintiff, an Estonian emigré, filed a defamation suit against a CIA agent who accused him of being a communist agent. An affidavit of the deputy director of the CIA was filed in support of the agent's motion for summary judgment on the ground that he was privileged to defame the plaintiff because he was acting under orders of the CIA. In the affidavit, the deputy director stated that the defendant had been ordered to identify the plaintiff as a communist agent and that revelation of any further information about the matter (including who had given the order) would be contrary to the security interests of the United States. The trial court noted that the plaintiff was in a "very difficult position" because of the combination of the privilege available to the defendant for acting on orders and the one available to the CIA to prevent further disclosure, but also noted that the same problem would exist at a trial and concluded that summary judgment based on the affidavit was appropriate.

We believe that the main point here is that at the time the affidavit of Klingerman was offered in support of the motion for summary judgment, he was dead and, although the facts recited in his affidavit would be admissible, they could never be admitted through testimony by him and the affidavit itself would not qualify for admission as an exception to the hearsay rule. Under such circumstances, the affidavit cannot be used for purposes of summary judgment.

The Spiers next challenge the ruling on the motion for summary judgment insofar as it was based on a finding that Ind.Code § 34–4–16.5–3(9) rendered the city immune from liability because the accident was allegedly caused in part by third parties: the unknown teenager or neighbors Hartwell and White. The Spiers argue that the city failed to demonstrate the absence of a genuine issue of material fact concerning the question of whether the city is immune from liability because a third party allegedly contributed to this accident. They cite *City of Bloomington v. Kuruzovich* (1987), Ind.App., 517 N.E.2d 408, for the proposition that a municipal government will not be immune from liability for the actions of a third party unless the third party proximately caused the injury. They assert that the city failed to prove that the actions of the unidentified teenager proximately caused this accident and Jeffrey's injuries.

The city argues that *Kuruzovich* is wrongly decided and that the immunity defense is available to a municipality even if the acts of the municipality are a proximate cause of an accident if the actions of a

third party contributed to the accident. The city advances several arguments against *Kuruzovich*. The city claims that the plain language of I.C. § 34–4–16.5–3(9) grants municipalities immunity whenever the actions of a third party contribute to an injury. It asserts that *Klobuchar v. Purdue University* (1990), Ind.App., 553 N.E.2d 169 supports this contention and further holds that under the statute a municipality is never liable for any injury caused in part by the actions of a third party in the absence of a special duty. The city asserts that this section of the immunity statute would be useless if construed in the manner advanced by *Kuruzovich* because it would do no more than restate the law of intervening causes. Finally, the city asserts that the *Kuruzovich* interpretation fails to give effect to the legislative intent to protect the public funds. The city notes that municipalities are exempted from the comparative fault act, and argues that this exemption coupled with the interpretation of the immunity act advanced in *Kuruzovich*, renders municipalities less protected from liability for the actions of others than all other litigants.

As an additional argument, the city asserts that it is immune even if *Kuruzovich* is good law because the allegedly intentional actions of the unknown teenager were not foreseeable and thus broke the causal connection between the city's failure to inspect and repair the signpost and the accident which resulted in Jeffrey's injury. The city states that the inference that the teenager broke the sign is the only one which reasonably may be drawn from the undisputed facts.

■ We cannot agree with the city's contention that the *Kuruzovich* court erred in construing the statute to grant immunity only when the third party's actions were the proximate cause of the injury. It is true that we may not construe a statute where the plain language of the statute is unambiguous. *Superior Construction Co. v. Carr* (1990), Ind., 564 N.E.2d 281, 284. However, where a statute is subject to more than one reasonable interpretation, it is ambiguous and open to construction by

the courts. *P.B. v. T.D.* (1990), Ind., 561 N.E.2d 749, 750.

In this case, we cannot say that the statute is unambiguous unless the interpretation advanced by the city is the only reasonable interpretation of the statute. In order to do so, we would have to decide that the interpretation advanced by *Kuruzovich* and by *Maroon v. Department of Mental Health* (1980), Ind.App., 411 N.E.2d 404 is objectively unreasonable. We find that a reasonable person could accept the interpretation advanced in *Kuruzovich* and *Maroon*, and we reject the city's argument concerning the plain language of the statute.

■ Because the statute is ambiguous, we must construe it. In doing so, we keep in mind that under the doctrine of *stare decisis* we should follow the previous decisions of this court construing the statute. *Bailey v. Pugh* (1921), 83 Ind.App. 431, 437, 131 N.E. 836, 838. We may repudiate those decisions only if strong reason exists to do so. *Nash Engineering Co. v. Marcy Realty Corp.* (1944), 222 Ind. 396, 410–411, 54 N.E.2d 263, 268. We have examined the *Kuruzovich* and *Maroon* decisions, and we find no strong reason to abandon them.

In *Maroon*, the plaintiffs' decedent was killed by an individual who had escaped from the custody of the department. The plaintiffs sued, alleging that the department was negligent for allowing the escape. The trial court dismissed the plaintiffs' complaint, and they appealed.

On appeal, the department argued that I.C. § 34–4–16.5–3(9) rendered it immune from liability because the decedent was killed by a third party. This court rejected the department's argument in the following passage:

"The State's final argument under the Tort Claims Act is that [the killer] was not a governmental employee; therefore, the State is immune under Ind.Code 34–4–16.5–3(9):

'A governmental entity or an employee acting within the scope of his employment is not liable if a loss results from:

\* \* \* \* \* \*

(9) the act or omission of someone other than the governmental entity [or] employee[.]'

\* \* \* \* \* \*

Although Indiana has long followed the general principle of proximate causation that the intervening conduct of a third party precludes recovery only where the third party's conduct was a new, independent, intervening force not reasonably foreseeable at the time of defendant's wrongful conduct, [citation omitted], the State appears to argue that the subsection should be interpreted to preclude the State's liability if *any* third party intervenes, whether foreseeable or not. The State was not so protected before the effective date of the Tort Claims Act, [citations omitted], which act is recognized as merely a compilation of prior existing common law, with one exception not relevant here. [citations omitted]. If Ind.Code 34–4–16.5–3(9) were to be construed as argued by the State, it would modify a fundamental rule of the common law. To have that effect, a statute must be clear and concise in its expression of such an intent, and such an intendment cannot be supported by mere implication. [citation omitted]. The statute expresses no such intent and affords the State no immunity under these facts."

*Maroon*, 411 N.E.2d at 417. Thus, *Maroon* clearly holds that a city is absolved from liability only for those unforeseeable actions of third parties that proximately cause an injury and are such that they intervene to "break" the chain of causation from the city's negligent action. The fourth district accepted this reasoning in *Kuruzovich*.

■ We find no strong reason to disavow the reasoning of these two cases. Their interpretation of the statute is reasonable. In addition, supreme court cases interpreting other sections of the tort claims act have observed that the statute should not be expansively construed to broadly immunize the government. Thus, in *Tittle v. Mahan* (1991), Ind., 582 N.E.2d 796, 800, Justice Krahulik wrote for the court:

> "First, a statute (such as the Tort Claims Act) which is in derogation of the common law must be strictly construed against limitations on a claimant's right to bring suit. *Collier v. Prater* (1989), Ind., 544 N.E.2d 497, 498. Secondly, when the legislature enacts a statute in derogation of the common law, this Court presumes that the legislature is aware of the common law, and does not intend to make any change therein beyond what it declares either in express terms or by unmistakable implication. *State Farm Fire & Cas. Co. v. Strutco Div., King Seely Thermos Co.* (1989), Ind., 540 N.E.2d 597, 598."

This passage makes it clear that Judge Neal followed the correct approach in *Maroon*. Just as the supreme court strictly construed subsection 7 of the act against the governmental unit in *Tittle*, the court of appeals strictly construed subsection 9 in *Maroon*. In both cases the courts did so because the tort claims act is in derogation of common law, and because our courts will not find that the legislature intended to change the common law unless it clearly indicates that it intended to do so. As Judge Neal observed in *Maroon*, there is nothing in subsection 9 to indicate such an intent.[2]

---

**2.** Two additional considerations support our decision to follow *Kuruzovich* and *Maroon*. First, we note that the supreme court denied transfer in both of these cases and that the legislature has not amended the language of subsection 9 even though it has amended the statute since this court decided those cases. Under these circumstances, we may find that the legislature has acquiesced in the interpretation advanced in *Kuruzovich* and *Maroon*. *Citizens' Trust & Savings Bank v. Fletcher American Co.* (1934), 207

Ind., 328, 334, 192 N.E. 451, 452, 99 A.L.R. 1474, 1477. In addition, in the only case uncovered by our research in which a court construed an immunity provision nearly identical to subsection 9, the South Carolina Supreme Court refused to hold that S.C.Code Ann. § 15–78–60(20) granted immunity whenever an injury was due in part to the negligence of a third party. *Greenville Memorial Auditorium v. Martin* (1990), 301 S.C. 242, 246–247, 391 S.E.2d 546, 548–549.

The evidence gives rise to conflicting inferences concerning the question of whether the alleged actions of the unknown teen were an unforeseeable intervening cause, even if the trial court were not in error in relying on the Klingerman affidavit. The affidavit does not establish that the teen broke the sign. Klingerman alternatively stated that he thought the sign would break, that it did not break, that it must have cracked, that he did not check to see if it broke, and that he did not report a broken sign to the city. This is equivocal evidence at best. The affidavits offered by the Spiers indicated that rust could and did cause signposts to break, that the city knew of the problem and recognized the need to inspect the signs, but that it abandoned the inspection program, and that the signpost was rusted through at the break point. The finder of fact reasonably could infer that, even if the unknown teen did exist, he did not break the signpost and that the signpost rusted through and broke under the weight of Jeffrey's friend. Because genuine issues of material fact remain to be determined by the finder of fact the trial court should not have entered summary judgment in favor of the city.

The trial court erred in entering summary judgment in favor of the city. We therefore reverse its judgment and remand for further proceedings.

REVERSED.

SHIELDS, J., concurs.

RUCKER, J., concurs in result.