The **DEPARTMENT OF REVENUE OF the STATE OF INDIANA,** Appellant–Defendant,

v.

**THERE TO CARE, INC., and Extend–A–Hand Association, Inc.,** Appellees–Plaintiffs.

No. 71A05–9310–CV–371.

Court of Appeals of Indiana, Fifth District.

Aug. 16, 1994.

Transfer Denied Dec. 8, 1994.

---

Pamela Carter, Atty. Gen., Terry G. Duga, Deputy Atty. Gen., Indianapolis, for appellant.

Charles E. Bloom, Herschel, Accettola, Bloom & Associates, Toledo, OH, for appellees.

BARTEAU, Judge.

The Indiana Department of Revenue (Department) appeals the trial court's decision that Appellees, There To Care, Inc. and Extend–A–Hand Association, Inc., are "qualified organizations" under the Indiana Charity Gaming Act, Ind.Code 4–32–6–20 (the Act).

We affirm.

### FACTS

There To Care and Extend–A–Hand Association are both nonprofit corporations formed for charitable purposes and incorporated in Ohio. Both are exempt from taxation under section 501(c)(3) of the Internal Revenue Code and are admitted to conduct business in Indiana. There To Care was incorporated in 1977 and admitted in Indiana on May 26, 1989. Extend–A–Hand was incorporated in 1982 and admitted in Indiana on April 24, 1989.

Both corporations were licensed to operate games of chance in Indiana under the provisions of the Act then in effect. Extend–A–Hand's license was effective June 1, 1992, and There To Care's license was effective July 1, 1992. The licenses of both were revoked later that July because the same individual was named as an operator on both corporations's applications, in possible violation of the Act. That problem was resolved administratively. In October of 1992, the Department again revoked the licenses citing four additional grounds. Three of those grounds were also resolved administratively, and the only basis for revocation at issue in this appeal is the Department's contention that neither There To Care nor Extend–A–Hand was a "qualified organization" eligible for a bingo license under the version of I.C. 4–32–6–20 in effect at the time of the license revocations. Specifically, the Department contends that the Act required an organization to operate *in Indiana* for at least five years before it could become "qualified." Under that interpretation, neither corporation was "qualified" at the time the licenses were revoked in October of 1992. While both had been in existence for well over five years, neither had been operating in Indiana for five years.

### DISCUSSION

The Charity Gaming Act applies only to "qualified organizations," I.C. 4–32–1–1(a), and the only issue on appeal is the construction of the statute then in effect defining that term.

A "qualified organization" is:

(a)(1) a bona fide religious, educational, senior citizens, veterans, or civic organization operating in Indiana that;

(A) operates without profit to the organization's members;

(B) is exempt from:

(i) taxation under Section 501 of the Internal Revenue Code;

(ii) gross income tax under IC 6–2.1–3; or

(iii) property tax under IC 6–1.1–10; and

(C) has been continuously in existence for at least five (5) years or is affiliated with an Indiana parent organization that has been in existence for at least five (5) years; or

(2) a bona fide political organization operating in Indiana that produces exempt function income (as defined in Section 527 of the Internal Revenue Code).

I.C. 4–32–6–20(a).

The Department contends that the conjunctive "and" that precedes sub-clause (C) links all the sub-clauses together, meaning that the phrase "operating in Indiana" in section (a)(1) must necessarily require the phrase "in existence for at least five (5) years" to be read as meaning in existence *in Indiana* for at least five years.

■ We agree with the trial court that the Department's construction is "strained," but believe the Department has pointed out a grammatical ambiguity sufficient to allow us to examine the meaning of the provision. We may not construe a statute when its plain language is unambiguous, but when the language is subject to more than one reasonable interpretation, it is open to construction by the courts. *Spier by Spier v. City of Plymouth* (1992), Ind.App., 593 N.E.2d 1255, 1261, *reh'g denied, trans. denied.* When construing a statute, our objective is to determine and effect the intent of the legislature. *Park 100 Development Co. v. Indiana Dept. of State Revenue* (1981), Ind., 429 N.E.2d 220, 222.

■ At the same time, we must interpret a statute in a way that renders it constitutional. *Willis v. State* (1986), Ind.App., 492 N.E.2d 45, 47. When a statute can be construed to support its constitutionality, that construction must be adopted. *Matter of Tina T.* (1991), Ind., 579 N.E.2d 48, 56. Because the Department's interpretation of the definition of "qualified organization" would

render the statute unconstitutional as violative of the commerce clause, we hold that a charity, in order to be a "qualified organization," need not be in existence *in Indiana* for a period of five years before becoming eligible for a bingo license under the Charity Gaming Act.[1]

■ The "commerce clause," U.S. Const. Art. I § 8, grants Congress the power to regulate commerce among the states. It has also long been interpreted to limit the ability of a state to pass legislation that interferes with interstate commerce. *Hughes v. Oklahoma* (1979), 441 U.S. 322, 326, 99 S.Ct. 1727, 1731, 60 L.Ed.2d 250. When a state statute discriminates "either on its face or in practical effect" against interstate commerce, the burden is on the state to show that the statute "serves a legitimate local purpose" which could not be adequately served with nondiscriminatory alternatives. *Id.* at 336, 99 S.Ct. at 1736. State regulation of legal gambling implicates the commerce clause. *See United States v. Bagnariol* (9th Cir.1981), 665 F.2d 877, 896, *cert. denied, Bagnariol v. United States* (1982), 456 U.S. 962, 102 S.Ct. 2040, 72 L.Ed.2d 487 (scheme to liberalize state gambling laws had sufficient effect on interstate commerce to satisfy jurisdictional requirements of various federal criminal statutes); *Gulch Gaming, Inc. v. State of South Dakota* (D.S.D.1991), 781 F.Supp. 621, 626 (requirement that corporations applying for gaming license be owned in the majority by South Dakota residents violated the commerce clause); *National Ass'n of Fundraising Ticket Mfrs. v. Humphrey* (D.Minn.1990), 753 F.Supp. 1465, 1473 (Minnesota requirement that "pull-tabs" be manufactured in Minnesota violated the commerce clause).

As interpreted by the Department, the statute defining "qualified organization" would affirmatively discriminate against interstate commerce. By limiting eligibility for bingo licenses to bona fide charities that have been continuously in existence *in Indiana* for at least five years, the statute

---

1. The legislature amended I.C. 4–32–6–20 effective July 1, 1994, to adopt the Department's interpretation. I.C. 4–32–6–20(a)(1)(C) now requires a "qualified organization" to have been "continuously in existence in Indiana for at least five (5) years" or to be affiliated with a parent organization that has been in existence in Indiana for at least five years. Because the amended version of the statute is not before us, we do not now address its constitutionality.

would exclude all similarly-situated and equally worthy charities solely because they had previously been operating outside of Indiana. As such, it discriminates "on its face" against interstate commerce, and the Department bears the burden of showing the statute serves a "legitimate local purpose" which could not be adequately served with nondiscriminatory alternatives. *Hughes,* 441 U.S. at 336, 99 S.Ct. at 1736. When there is facial discrimination against interstate commerce, the purported legitimate local purposes and the absence of nondiscriminatory alternatives are subjected to the "strictest scrutiny." *Id.* at 337, 99 S.Ct. at 1737.

The Department has not met its burden. It first argues, without citation to authority, that the legislature did intend to limit bingo licenses to Indiana-connected charities. We find nothing in the language of the statute or elsewhere to suggest the legislature intended a result of such questionable constitutionality. Rather, the legislature intended to legalize and regulate certain means of charitable fundraising that had previously been illegal, if not uncommonly used, in Indiana. I.C. 4–32–1–2.[2]

Numerous provisions of the Act define, without any reference to the "state of existence," what makes various types of charitable organizations "bona fide," *see* I.C. 4–32–6–5 through 10, and assure that the organization is not a "fly-by-night" charity formed solely for purposes of operating bingo parlors. *See* I.C. 4–32–6–20 ("qualified organization" must be nonprofit, tax exempt, and continuously in existence for at least five years or affiliated with an Indiana parent organization that has been in existence for at least five years).

Further, the statute nowhere requires that money raised by bingo games be spent in Indiana. Extend–A–Hand and There to Care spent the money they raised from their Indiana bingo games on local charitable causes.[3] At the same time, the plain wording of the statute would allow an "Indiana" charity to spend all of its proceeds on out-of-state charitable purposes. The absence of any requirement that bingo proceeds be spent in Indiana further suggests the legislature could not have intended the "Indiana" limitation the Department urges us to adopt.

The Department then argues that even if the Act restricts interstate commerce, it is valid as a reasonable exercise of the state's police power to regulate gambling:

> If certain activities of questionable propriety, such as gambling, are permitted, they must be regulated by exercise of the police powers of the State to prevent them from working to the detriment of the citizens or in derogation of the purposes which gave rise to the legislative permission.

Appellant's Brief at 8. Requiring that charities be in operation *in Indiana* for at least five years, the Department contends, ensures that "legitimate" charities are conducting games of chance. A state does have a legitimate interest in maintaining tight regulatory control over gambling, an industry illegal in many states and highly restricted in scope in Indiana. *See Gulch Gaming,* 781 F.Supp. at 628. However, the Department has provided no support for its suggestion that a charity which has been "in existence" for over five years, has been certified as a tax-exempt charitable organization under § 501(c)(3) of the Internal Revenue Code and which has devoted the proceeds of its Indiana bingo operation to Indiana charitable purposes must necessarily be less "legitimate" than an Indiana-based charity, solely because part of its "existence" has been in a neighboring state. Nor has the Department met its burden of showing, with even speculative rationale, that its legitimate local purpose of regulating gambling licensees cannot be served by less discriminatory means.

---

**2.** I.C. 4–32–1–2 states:

The purpose of this article is to permit a licensed qualified organization:

(1) to conduct bingo events, charity game nights, door prize drawings, and raffles; and

(2) to sell pull tabs, punchboards, and tip boards; as a fund raising activity for lawful purposes of the organization.

**3.** For example, the record indicates that There to Care spent almost $46,000 in Mishawaka, Indiana in 1991 for charitable purposes supported by its bingo operation.

The Department's interpretation of the definition of "qualified organization" in the Indiana Charity Gaming Act would place an impermissible burden on interstate commerce in violation of the commerce clause. For that reason, we affirm the trial court's decision that the statute in effect when There to Care and Extend–A–Hand's licenses were revoked did not require a charitable organization to be in existence *in Indiana* for more than five years before it could be a "qualified organization" eligible for a bingo license.

Affirmed.

RATLIFF, Senior Judge, concurs.

SHARPNACK, C.J., concurs in result with opinion.

SHARPNACK, Chief Judge, concurring.

I concur in result for the reason that I do not consider the provisions of I.C. § 4–32–1–1(a) to be at all ambiguous. I see no way, without considerable strain, to read the statute to mean what the Department contends it means. The plain language of subclause (C) requires only that an organization "operating in Indiana" has been in existence for five years or is affiliated with an Indiana parent organization that has been in existence for five years.